## WILLIAM LANGFITT and others *v.* THE CLINTON AND PORT HUDSON RAIL ROAD COMPANY.

On the trial of an exception to the petition, and during the argument of defendants' counsel, plaintiffs offered in evidence letters of tutorship and administration, which were excepted to as too late. The bill of exceptions did not expressly state whether the evidence had been closed. *Held*, that such an objection is a weak one; and that the bill of exceptions should have stated all the circumstannes with particularity, to enable the court to determine whether the evidence ought to have been excluded on a ground purely technical. Objection overruled.

In an action against a Company, plaintiffs introduced witnesses who proved, without objection, that they had been appointed engineers of the Company by a written resolution of the Board of Directors. On a motion to strike out the evidence, on the

ground that parol evidence of the appointment was inadmissible : *Held*, that the testimony having been received without objection, and defendants having it in their power to offer in evidence the resolutions and contract with the witnesses, if material to their defence, the motion was correctly overruled.

Action for a balance due on a contract, by which plaintiffs undertook to construct à railway, the defendants, the other contracting party, agreeing to supply the lumber, and for damages for loss sustained by plaintiffs in consequence of defendants' failure to furnish the lumber. Plea in reconvention that plaintiffs had, by a subsequent contract, bound themselves to furnish the lumber. *Held*, that though different from the main action, the demand in reconvention was incidental to the claim for damages, within the meaning of arts. 374, 375, of the Code of Practice.

In an action on a joint contract, the individual debt of one joint contractor may be pleaded in compensation of his share in the joint contract.

It is no objection to a witness, offered to prove the defective construction of a railway, that he is not a professional engineer. His testimony is admissible, and should be left to the jury for what it is worth. ·

Appeal from the District Court of East Feliciana, *Johnson*, J.

Garland, J. Langfitt and Perry, and Ann M. Boatner, the widow of Elias Boatner, deceased, and tutrix of his minor children, and James W. Boatner, a major heir of Elias, institute this action, alleging that Elias Boatner, in his lifetime, together with Langfitt and Perry, and A. G. Carter, entered into a contract with the defendants, whereby they agreed to construct so much of the superstructure of the rail road, then being made from Port Hudson to Clinton, with a lateral branch to Jackson, as had not already been contracted for by Concross, Davis & Co. The defendants were to pay at the rate of $2500 per mile for the work ; $700 on the completion of each mile, and $1800 per mile when the whole should be finished. The work, they aver, has been completed according to the specification agreed upon and received by the company, measuring nineteen miles and one hundred and fifty-six chains.

It is alleged that, sometime after this contract was made, Carter assigned all his interest in it to Langfitt and Perry, who agreed to perform his part of it. Plaintiffs claim the sum of $49,937 50, and the amount of a bill for extra work and materials furnished, amounting to $2552 85 ; $1000 for the transportation of mud sills, which the defendants were to furnish ; and $5000 damages for losses incurred by the failure of the defendants to furnish lumber on the bank of the Mississippi for the construction of the road, which they were bound to do, whereby their workmen, hands,

and themselves lost much time at different periods, and incurred heavy expenses, which several sums make $8552 85. They further claim the sum of $5000, it being the penalty stipulated in the contract for a failure to comply with it; the whole amounting to $63,491 25, subject to certain credits.

The contract to execute the work, it is alleged, is duly recorded, and a privilege on the work is claimed for whatever is due.

The defendants deny the right of Ann M. Boatner to prosecute the suit, or to stand in judgment. They plead a general denial. They admit the contract set forth, but aver that the work has not been completed; that so far as it has been finished, it is not executed according to the terms of the contract, but is defective throughout; that the superstructure is badly laid, the mud sills not of proper materials; that the width of the road is unequal, the string pieces not level, and neither they nor the iron rails properly fastened, by reason of which the use of the road is interrupted and inconvenient.

A plea of payment, to the amount of $30,000, is presented. They allege that said payments were made in error, and that the road was used in error before the defects were discovered. It is further answered, that the defendants made a contract with the plaintiffs, in their own right, and as assignees of Carter, whereby the latter engaged to furnish the lumber for the use and construction of the road, undertaken to be built by them, which they failed to do, in consequence of which the construction of the road was much delayed, and the defendants obliged to send a great distance to procure materials, at a heavy expense, to their damage $10,000. They, therefore, pray, by way of reconvention, for the sum of $30,000 paid in error, for $10,000 damages for a failure to comply with this last contract, and for $5000, the penalty mentioned in the first named contract.

Sometime after the filing of this answer, James W. Boatner prayed to become a party, as administrator of the estate of his father, Elias Boatner, he having been appointed administrator of his estate, accepted with benefit of inventory, since the institution of the suit, which was permitted. The defendants then filed various exceptions to the action :

*First.* That the contract is a joint obligation, and that all the parties to it are not parties to the suit, nor properly presented.

*Second.* That A. M. Boatner had no right to appear.

*Third.* That in the original petition, J. W. Boatner appears as an heir, and in his supplemental petition as administrator of his father's estate, which characters are inconsistent with each other.

*Fourth.* That Langfitt and Perry have no right to prosecute the suit, as they show that there are other persons connected with them who are not parties. These exceptions seem to have been overruled.

The defendants, availing themselves of J. W. Boatner's supplemental petition, filed an amended answer, in which, in addition to what had been previously alleged, they deny Boatner's right to represent his father's estate, aver that Carter ought to be made a party, against whom they have claims which they are entitled to plead in compensation, if any thing be due on the contract; that the work was not completed at the time this suit was instituted, and, so far as it had been finished, that it was not done in a workmanlike manner. Payments to a large amount were alleged to have been made during the progress of the work, which were reclaimed, as made in error. The contract made by Carter, Boatner and Perry, to furnish the timber on the bank of the river, is again advanced, with an allegation of an assignment of Carter's interest to Langfitt, which contract was violated, and $10,000 damages claimed. In consequence of the delay caused by this breach of contract, the defendants allege that they were kept out of the profits and revenues of the road, to their damage $20,000. The penalty of $5000 in each contract, is also claimed. The defendants further aver, that if the plaintiffs suffered any damages by delay, for want of materials and lumber, it was caused by their failure to furnish it. The defendants further answer, that if this suit can be maintained without Carter being made a party, nothing can be recovered in his right, as the defendants have liquidated demands against him, which will more than pay his portion, and which they plead in compensation. They further plead compensation against the demand of Boatner's estate, for more than his portion, which he agreed, in his lifetime, should be so settled.

The answer concludes by a demand in reconvention for $10,000 paid in error, and $10,000 more for breaches of the contract to furnish° lumber and timber; and, if any thing should be found owing to any of the plaintiffs, it is prayed that it may be compensated by the demands presented against the said plaintiffs and Carter.

Upon these pleadings the parties went to trial. After a long examination of witnesses a verdict was given in favor of the plaintiffs for $29,840 92, with 10 per cent interest from the 22d June, 1840, with a privilege on the rail road, on which judgment was rendered, and also for the sum of $1925 97 for extra work. On the plea in reconvention, a judgment was given in favor of the plaintiffs, from which the defendants have appealed.

· The record shows about the average number of bills of exception in cases from the third judicial district, to wit, fourteen. ⸜Several of them it will be only necessary to notice very briefly. .

· The first states, that on the trial of the exceptions, and during the argument of the defendants' counsel on them, the plaintiffs offered in evidence the letters of tutorship given to A. M. Boatner, and the letters of administration granted to James W. Boatner, then on file, which were objected to by the defendants as coming too late, but that they were admitted. As the bill of exceptions states the point, we cannot say that the court erred. The evidence was offered on the trial and during the argument, but whether the evidence had been finally closed by the parties does not appear. It is rather a feeble objection to legal evidence, that it is offered too late on the trial, and all the circumstances should be particularly stated to enable the court to judge whether it ought to be excluded by an objection purely technical.

The second bill of exceptions, is to allowing the sheriff to amend his return. The defendant gives no reason why it should not have been permitted, and we cannot say that the court erred.

The third bill states that the defendants' counsel moved the court to strike out that part of the testimony of Thorn and Cornwall, which went to prove that they were appointed engineers on the railroad, and were authorized by the defendants to receive the work executed by the plaintiffs, on the ground that the appointments were made by written resolutions of the Board of Direct-

ors, and that a contract existed between them and Thorn, which ought to have been produced, and that no parol proof of such appointment could be given. We think the court did not err. In the first place, the testimony had been given and taken down without objection; and secondly, the plaintiffs were not the keepers of the defendants' resolutions and contracts. If they had deemed the resolutions and contract with Thorn material to their defence, or necessary to contradict or explain any thing stated, it was in their power to have produced and offered them.

The fourth bill of exceptions of the defendants was taken to the refusal of the court to permit Geo. W. Northam to be examined as a witness, to prove that the defendants had legally put the plaintiffs (the Saw Mill Company) in default on their contract with the Railroad Company to deliver the lumber specified in contract H ; and whether he was present, with another witness, when a committee of the Directors made a demand on the plaintiffs (forming the Saw Mill Company) to perform that contract. To this question the plaintiffs objected, on the ground that the plea in reconvention set up by the defendants is on a contract different and independent of that sued on ; that it is not incidental to or growing out of it, but antecedent. In refusing to receive this testimony, we think the court erred. When the plaintiffs' demands are examined, it will be seen that they claim $5000 for expenses incurred and time lost, in consequence of the necessary lumber and materials not having been furnished by the defendants, while the latter say if this be so, it was in consequence of the plaintiffs themselves neglecting and refusing to comply with another contract, by which they were themselves to supply all such materials and lumber, and that one contract was dependent on the other. It is shown that Boatner, Carter and Perry first contracted to furnish the necessary lumber; that afterwards, with Langfitt, they undertook to make the road, and that shortly after Langfitt and Perry purchased Carter's interest in both contracts, and agreed to perform them. We are, therefore, of opinion that the court erred in refusing to receive evidence on the plea in reconvention. The demand, although different from the main action, is, it appears to us, incidental to the plaintiff's claim for $5000 damages, and comes within the spirit of the articles 374, 375 of the Code of Practice. It does not appear

Langfitt and others v. The Clinton and Port Hudson Rail Road Company.

to us material that Langfitt was not originally a party to this con-
tract, as he subsequently became the assignee of a part of Carter's
rights ; and it is to his neglect or fault, since the assignment, that
the breach of contract is assignable.  He is *quoad hoc* in the
place of Carter.

The fifth bill of exceptions by the defendants, is to the court
receiving the document B. in evidence, on the ground that they
were not parties to it.   We think the court did not err.  The docu-
ment is the transfer from Carter to Langfitt and Perry, of his in-
terest in the two contracts which was set up in the petition, and
was necessary to establish their right to recover his share, or
rather to show that it was vested in them.

The sixth bill of exceptions states that on the trial the defend-
ants, to support their plea of compensation against the virile por-
tion of Robert Perry, in the contract, offered in evidence two notes
of Perry, marked A. and B., amounting to $1400, the signatures to
which were admitted.   These were objected to by the plaintiffs
on the ground, that the individual debt of one of the plaintiffs to
the defendants, cannot be given in evidence to compensate the
virile portion of one of the plaintiffs, where all are interested in
the contract as ordinary and particular partners.   The court sus-
tained the objection, and refused to receive the notes in compen-
sation.   In this we think the judge erred.   The plaintiffs do not
any where, either in their pleadings or in the contracts, show that
they were partners in any description of partnership known to the
law.   They are co-contractors or joint obligors, each entitled to
his particular share or portion, and as such, we are of opinion
that the individual debt of any one of them may be compensated
against his share or virile portion.

The seventh bill of exceptions is taken by the defendants to the
refusal of the court to permit them, on the cross-examination of
Thomas Montgomery, to ask whether the work done by the plain-
tiffs on the rail road was good or bad, or done in a workmanlike
manner, or in conformity to the contract, the witness having had
experience in the construction of rail roads, though not a profession-
al engineer.   We think the judge erred.   It is shown that Montgo-
mery had, for a number of years, been engaged in the construc-
tion of rail roads, either as a contractor or superintendent, but was

never employed as an engineer. His opinion, we think, might have been taken, and left to the jury for what it was worth. The fact of not being a professional engineer does not prevent a man from being examined as a witness, although his opinion may not have as much weight as that of one who is a professional engineer.

The eighth bill of exceptions is the same with the third, and and we think the court did not err in relation to it.

The ninth bill it is not material to notice, further than to say, that we see no error in admitting the letters testamentary to James W. Boatner to be read as evidence.

The question raised by the tenth bill of exceptions seems to us decided by the view we have taken of the fourth, and that by the eleventh is the same as in the seventh. The twelfth bill is settled by our opinion on the third.

The thirteenth bill of exceptions is to the refusal of the court to permit the liabilities of A. G. Carter to the defendants, to be offered and pleaded in compensation to the demand of the plaintiffs, on the ground that Carter was no party to this suit, and that suits had been instituted on the notes offered against him which were then pending and undetermined. We think the court did not err. It is true that Carter was originally a party to the contract, but he had, previous to his liability on the notes offered in compensation, transferred all his interest in the contract to Langfitt and Perry. Whether the defendants had notice of this transfer is not shown ; but in their answer they do not set forth, as specifically as they should, this claim for compensation, so as to put the plaintiffs, Langfitt and Perry, on their guard, and enable them to show a notice of the assignment, after which the liabilities of Carter could not be compensated against them.*

The fourteenth and last bill of exceptions, was taken to the rejection of J. S. R. Guay, as a witness, who was offered by the

---

* The record shows that the transfer was made on the 1st September, 1838. Three of the five notes, on which Carter was endorser, pleaded in compensation, are stated in the account annexed to the supplemental answer to have become due, one on the 25th Oct., 1837, another on the 3d Jan'y, 1838, and the third on the 24th of February of that year. The periods at which the other two fell due, are not mentioned.

defendants to prove that the work was defectively constructed by the plaintiffs. The court rejected the witness on the ground that he was a mortgage stockholder in the Company, notwithstanding he offered to relinquish his stock, and admitted that his cash stock had been forfeited. We do not think the court erred in rejecting the witness. He was a stockholder when he offered to testify, and a mere offer to relinquish his mortgage stock, not accepted by any one, we cannot consider as such a discharge of liability as would qualify the witness to testify.

The judgment of the District Court is, therefore, annulled, the verdict of the jury set aside, and the case remanded for a new trial, with directions to the District Judge in admitting or rejecting witnesses or evidence, to conform to the principles set forth herein, and otherwise to proceed according to law; the plaintiffs and appellees paying the costs of the appeal.

Dunn and Andrews, for the plaintiffs.

Lyons and Muse, for the appellants.