## HEZEKIAH H. GEAR and A. HAMILTON GEAR
*v.*
## JOHN H. BULLERDICK.

1. FERRIES. A person operating a ferry under a special charter, has no right to seize a rival ferry boat, as forfeited to him, under the general law.

2. SAME — *when forfeiture declared, and how.* A forfeiture must be declared by some judicial proceeding, before the complaining party can take the rival ferry boat into his possession.

3. SAME — *authority under general law.* The forfeiture was given by the general law, against a party running a ferry without authority. A person operating a ferry across the Mississippi river, under the law of Iowa, is not in that predicament, and his boat cannot be seized by the owner of a ferry established over the same river by the laws of this State.

4. REPLEVIN will lie for a ferry boat so seized.

APPEAL from the Circuit Court of Jo Daviess county; Hon. BENJAMIN R. SHELDON, Judge, presiding.

This was an action of replevin for a ferry boat, brought by John H. Bullerdick against Hezekiah H. and A. Hamilton Gear, in the Circuit Court of Jo Daviess county.

The cause was tried by a jury, and a verdict rendered for the plaintiff, on which judgment was entered against the defendant for the costs, a motion for a new trial having been overruled.

The record is brought here by the Gears, who assign several errors, the principal one being the refusal to grant a new trial and rendering the judgment on the verdict.

From the view taken of the case by the court, it is unnecessary to state the pleadings, evidence or instructions, although the same were fully presented by counsel.

Mr. M. Y. JOHNSON, for the appellants, argued as follows:

The facts shown in the record in this case are, in brief, as follows:

The defendants below are the owners and proprietors of a ferry across the Mississippi river, from a point in Jo Daviess county, known as Gear's Landing, duly chartered by the legislature of the State of Illinois, and kept up and maintained according to law.

Bullerdick, the plaintiff below, in connection with Gordon & Willis and Burrichter, in the spring of 1862, constructed a two horse ferry boat, to run as an opposition ferry, landing at Gear's ferry landing, in Jo Daviess county. The boat was put on in April or May, and continued to run until August, receiv-

ing and landing passengers and freight at Gear's landing. In July, Bullerdick put down the ferriage to fifty cents, both ways, and carried all that came, up to the seizure of the boat by Gear. To stop Bullerdick from running his boat, suits were instituted in July, before a justice, to recover the penalty, under the statute, for interfering with and running an opposition ferry. This continued until August, when Gear seized and took possession of the boat. It was delivered back, and again commenced running as a ferry, when it was again seized by Gear, replevied by Bullerdick, and issues made up and trial had.

Gears pleaded the facts, that they had the *exclusive right* to have and maintain a ferry at the point indicated ; that Bullerdick was running his boat without any warrant or lawful authority, within the distance secured to the Gears by their charter, and in violation of defendants' franchise, and was conveying persons and property for toll over and across said river, by means whereof said boat became forfeited to the owners and proprietors of the regularly established ferry, and being so forfeited, that the said Gears, being the owners and proprietors of the regularly established ferry, entered upon and took possession thereof as their own property, and avers property in themselves, by reason of said forfeiture and seizure of possession, and prays judgment and a return of the property, &c.

Plaintiff filed amended replication, in which he denies using his boat in carrying persons and property over said river without legal authority, but sets up a license granted by proper authority of Jackson county, Iowa, to operate and run a ferry from Jackson county, Iowa, to Jo Daviess county, Illinois, and to land on the Jo Daviess county shore, upon a public road, *at* or near Gear's ferry landing. Admits he did run his boat as a ferry, but denies he carried persons and property from Gear's ferry landing, or within three miles of it, to the Iowa shore.

Defendants rejoin.

Plaintiff demurred to defendants' rejoinder. Demurrer sustained by the court, and defendants stand by rejoinder, and assign the ruling of the court thereon as error.

1.   To determine as to the sufficiency of the rejoinder, we must look to what was material in the plea and replication.

Every fact set out in the plea, not denied or avoided by the replication, is admitted.

The plea of defendants avers there was a legally established ferry, and they had the exclusive right to keep a ferry at the place, &c.   That the plaintiff maintained a boat and crossed persons and property at the place, &c., without any legal authority conferred by statute or licensed under the provisions of law, to convey persons and property over and across said river, and landing the same at Gear's landing.

The plaintiff rejoins.   He did not cross persons and property over said river *without legal authority*, but at the time, he was the owner of a ferry franchise, under the laws of Iowa, granted by the supervisors of Jackson county, Iowa, and was entitled to land persons and property on the Illinois shore, on a public road at or near Gear's landing.   Admits he did run his boat, and land persons and property at or near Gear's landing, but denies he carried persons or property from Gear's ferry landing, or within the three miles claimed as his exclusive right.

The defendants rejoin, that he did run and maintain the boat, &c., and crossed persons and property within the distance the defendants had the exclusive right, without any legal authority.

We insist this is a complete traverse of all the material facts necessary to be answered in the replication.   What are the material facts in the replication ?   We charge in our plea, he ran the boat, and carried passengers and property within the distance in which we had the exclusive right, without any legal authority, and landed at our landing.

He answers he did not run the boat, &c., *without any legal authority*, sets up an authority under the laws of Iowa, denies that he conveyed persons and property from Gear's landing or within the three miles where we had the exclusive right, &c.

What are the material facts presented in this replication ?  To the plea there are but two, the denial that he ran the boat without any legal authority, and that he conveyed persons and

property from Gear's landing, or within the distance claimed as exclusive.

Both these facts are asserted by the rejoinder, and both are necessary to make the issue. We could not take issue on the granting of license by Iowa. The material fact was, not whether license was granted by Iowa, but whether he had any legal authority to run the boat as a ferry within the distance set apart as exclusive. His license at most was but evidence, going to show, on the trial, legal authority. The court erred in sustaining the demurrer to the rejoinder; it was a complete answer to the replication.

II. The court erred in admitting as evidence the record and proceedings and *license* granted by the board of supervisors of Jackson county, Iowa. It appears that the board of supervisors of Jackson county, Iowa, undertook to license a ferry to run between the Illinois shore and Iowa, and authorize the plaintiff *to charge both ways.* They had no jurisdiction in Illinois, yet there is an attempt on the part of a board of supervisors, of Jackson county, Iowa, not only to license a ferry in Jo Daviess county, but to invade a ferry franchise, granted by the legislature, of thirty years standing.

The evidence was improper. It was not pertinent to any issue in the case, and should have been excluded as calculated to mislead the jury.

III. The court erred in giving the third and fifth instructions for plaintiff. This will appear apparent on an examination of the issues and proofs in the case hereafter.

IV. The court erred in refusing the defendants' instructions. These instructions not only contain correct propositions of law, but are pertinent to the issue, and based on the evidence given in the cause, as follows:

" If the jury believe from the evidence, that the defendants kept and maintained a regularly established ferry across the Mississippi river, from a point known as Gear's Ferry Landing in Jo Daviess county, Illinois, under a charter granted by the legislature of the State of Illinois, and that Bullerdick ran the boat in controversy as an opposition ferry boat, and con-

veyed passengers or property across the Mississippi river, from the Illinois shore to Iowa, taking said passengers or property for hire, from said Gear's Ferry Landing in Jo Daviess county, Illinois, without any legal authority or permit from the State of Illinois; and if the jury further believe from the evidence, that at and before the entering upon and taking possession of said boat by the defendants, the said boat was used for the purpose of conveying passengers or property across said river for hire from said Gear's Landing in Illinois to the Iowa shore, then said boat became forfeited to the owners or proprietors of the regularly established ferry.   And if the jury further believe from the evidence, that the said boat was entered upon and taken possession of by said defendants to their own use, by reason of said forfeiture, then the jury should find the issue of property in favor of the defendants."

By the 11th section of the statute entitled "Ferries and toll bridges" (R. S. ch. 42): "If any person shall at any time run any boat or water craft for the purpose of conveying passengers or their property across said waters, &c., or within three miles of any ferry, &c., he, she or they so offending shall forfeit every such boat or boats, or other craft, to the owner or proprietor of the ferry, &c., and the owner or proprietor of such ferry may, at any time after such forfeiture shall have accrued, enter upon and take possession of such boat or boats or other craft, to his or her own use, &c."

What does this instruction ask?

1st.  That if the jury believe from the evidence that the defendants kept and maintained a regularly established ferry at the place, &c., under a charter granted by the State of Illinois.

2d.  That the plaintiff ran the boat in controversy as an opposition ferry boat, and conveyed passengers or property across the river from the Illinois shore to Iowa, taking the passengers or property for hire from Gear's ferry landing in Illinois, without any legal authority or permit from the State of Illinois.

3d.  And if the jury further believe from the evidence, that at and before the defendants took possession of said boat, the

boat was used for the purpose of conveying passengers or property across the river for hire, from Gear's landing, in Illinois, to the Iowa shore, then said boat became forfeited to the owners or proprietors of the regularly established ferry.

4th. And if the jury further believe from the evidence that the boat was entered upon and taken possession of by the defendants to their own use, by reason of such forfeiture, then they should find the issue of property for defendants.

. What other element or fact is necessary to constitute the forfeiture of a boat than was embraced in this instruction ? — to run an opposition ferry for hire, and convey passengers or property without any permit or legal aulthority, against a legally constituted ferry?

What would a ferry franchise be worth if there were not some means provided to protect it? The law points out the means. When a legally established ferry is interfered with, the boat so used becomes forfeited to the owner or proprietor of the regularly established ferry, and he is authorized to enter upon and take possession of said boat or craft as his own property, &c. In this case we show a ferry of thirty year's standing, secured by an act of the legislature, kept up and maintained during all that time, able and ready to accommodate the public.

. What is shown on the other side? That the plaintiffs, Gordon & Willis and Burrichter, build the boat in controversy, to run as a ferry boat at the point secured by law to the defendants. Built expressly to interfere with our ferry, and run to the same landing. Put on as a ferry in April or May, and run as a ferry without any pretext or color of authority from any quarter, until June, when a license is granted by the board of supervisors of Jackson county, Iowa, for the plaintiff to run a ferry from the Iowa shore to the Illinois shore, in Jo Daviess county, and "charge both ways." The license does not fix the point of landing in Illinois, but the proof shows the landing was designated and fixed before the boat was built. It was built to run as an opposition ferry, and did run as such until it was seized and taken possession of by the owners and proprie-

tors of the regularly established ferry, as the only means of stopping it.

As to the transfer of the boat and horses by the plaintiff, to Gordon & Willis and Burrichter, on the 28th of July, it is too transparent to deceive any one, and is an additional evidence of the *mala fides* on the part of these claimants.

They furnished a part of the money to build the boat.

The boat was built to run as an opposition ferry to Gear's landing in Illinois.

After suits had been instituted against plaintiff, before a justice, for the penalty under the statute, and when the boat was seized and discharged, a transfer is made of the boat and horses by plaintiff to his partners in building the boat. And they, simultaneously with the transfer, rent the boat and horses to the plaintiff, to run as a ferry at the same place, with the injunction he must not carry persons and property from Gear's landing in Illinois *for hire*. This is a shallow device, an attempt to evade a forfeiture, when the proof shows the boat was built by them to run as an opposition ferry.

But the proof is, by their witness and agent, the plaintiff continued to carry everything that wanted to cross, both ways, up to the last seizure by defendants, and charged *but one way*, from Iowa to Illinois, charging as much for returning as *he charged both ways*.

The lease given shows the transaction a sham. No time was fixed for the termination of the lease. Plaintiff retained the license granted him. The transaction is not covered gauze deep.

But it is a matter of no importance to defendants, who owned the boat. The proceeding of forfeiture and seizure was against the boat itself, and not the owners. We had nothing to do with the owners. The statute authorized us to seize the boat or craft, when used as a ferry in conveying persons or property to the injury of a regularly established ferry.

VI. The court erred in refusing a new trial, and rendering the judgment entered in this case. On this motion the whole record was before the court. The whole evidence shows, not

only that the defendants had a legal and regularly established ferry, but that their rights were invaded without color of authority. That the boat in controversy was used as a ferry, and at the time it was seized, it was forfeited and taken possession of to the defendant's own use, in the manner pointed out by the statute. A new trial should have been granted, and the errors, both as to the admission of the evidence and the instructions given and refused, should have been corrected.

Mr. A. L. CUMMINGS, for the appellee, in reply,

1st. The only questions in this case arise from legal constructions of chapter 42, R. S., 1845, and Gear's legislative charter, approved January 18th, 1840, and an extension of the same act, approved January 8th, 1849.

The court below held the act relating to ferries and toll bridges, ch. 42, R. S., 1845, as applicable to and embracing in its provisions all ferries, whether created under, and in compliance with, the provisions of that act or not, and also held that a ferry chartered by the legislature of the State, and not complying in any particular with the provisions of said chapter, might, under section 11, of said chapter, claim the forfeitures therein provided, even to seizing of boats as therein provided, by virtue of the clause in section 10, of said chapter, giving an extension of its privileges to " all other ferries and toll bridges which have at any time been established over any other of the lakes, rivers, creeks or other water-courses within the limits or upon the borders of this State," and that Gear's charter, in connection with the clause above cited, brought him fully within the penal sections of said ch. 42, R. S., 1845, thus enabling him to seize and forfeit boats as therein provided. Let us examine this proposition carefully, in order to see whether the court erred in this construction.

We notice in the first place that the act, ch. 42, R. S., 1845, is complete in itself, showing how ferries may be granted, the acts required by the grantee, both before and after the grant, in order that his ferry may be a complete and perfect franchise

under said act, and also furnishes the public, for whose benefit the franchise is granted, with ample remedies for any abuse of the franchise, of which the grantee may be guilty. It would seem from the act itself that the whole must be taken together, both safeguards and penalties, on both sides, unless section 10 clearly shows a contrary intention. The words "all other ferries" must have some operation, and must also clearly operate on ferries established before the passage of the act of 1845.

Unless, then, we can find "other ferries" established before the passage of that act, and filling all the requirements of that act, to which the clause "all other ferries" can be applied, we must admit the construction of the court below, to be the true one.

By reference to the act of 1827, Feb. 12th, of that year, it will be seen that the act provides for just such a class of ferries as the act of 1845, and being itself an amendment of the acts of Feb. 20th, 1819, and Feb. 9, 1821, and also of January 10, 1825, it contains also, in the main the same provisions. Section 10 of that act is also the same clause contained in section 10, of the act of 1845, under consideration, and refers, like that, to a class of ferries existing under the former laws of which this is an amendment.

We see then a reason why the act should go back and embrace in its provisions all ferries then existing, established under the former laws of which this is an amendment; but no reason why it should be made to embrace in its penal sections, ·that class of ferries, existing independent of its provisions, and without even a pretended compliance therewith. We infer, then, from the well known rules of construction, applied to this case, that the section was intended to embrace the former class, reasonably within its provisions, and to exclude those, for which no reason exists why they should be included.

A further examination of sec. 10, ch. 42, R. S., 1845, will strengthen this *prima facie* view of the case; the words are "when the same have been kept in operation or repair from time to time according to law, &c.;" according to what "law"

we may ask; evidently according to the general law, as laid down in other sections of the same chapter, inasmuch as a law must be construed together, and also inasmuch as the word *law* must refer to some general law, as distinguished from special statutes or grants, which may be *laws*, but are never referred to in the singular or general sense, and also because chapter 42, R. S. 1845, is the only *general law* on the subject of ferries, and therefore must be intended in section 10 as the "*law*."

The words, " all other ferries," with the limitation afterward interposed, in section 10, must clearly be taken to mean all other ferries established under the general law, and maintained under the general law, excluding, by necessary implication, all others not so established and maintained. This construction gives scope and operation to the whole of section 10, and at the same time does no violence to other parts of the general law as contained in said chapter, but, on the contrary, harmonizes the whole together, making the law consistent with itself.

The general law provides for the payment of money for a license of a fixed amount, and the giving a bond of from one hundred to five hundred dollars, conditioned to keep such ferry " *according to law*," which provision is in section 2, of chapter 42, R. S. 1845.

We observe the exact words are used in section 2 that are used in section 10 of said chapter. The general rule of construction is, that the same words, used in different parts of the same act, are understood in the same sense wherever used; and according to this rule these words, " according to law," used in sections 2 and 10, must be understood to mean the same thing in each section, there being nothing in the act itself to indicate a different meaning. Let us suppose, for the sake of argument, that the words, " according to law," in these two sections, refer to any and all law, special grants and statutes included, as well as the general law contained in this chapter. Then the conclusion follows, that to comply with the requirements of any special statute or grant would fulfill the bond, which conclusion would be absurd.

The bond must evidently be tried by the requirements of the

law contained in this chapter, and as the words are used in the same sense in both sections, it follows that only those ferries established and maintained under this chapter, or in accordance with the provisions thereof under former laws, of which this is an amendment, are embraced in section 10, or entitled to the penalties enumerated in section 11, or protected by any of its sections.

If this view of the case be correct, the court below erred in admitting Gear's charter in evidence in this case, as tending to justify the seizure of the boats, under section 11, chapter 42, R. S. 1845, and also erred, in the construction of the law, in ruling that Gear's charter brought him within the provisions of said section, without proof being first had showing a compliance with sections 2, 3, 5 and 7 of said chapter.

II. If the terms of section 10, of chapter 42, do not include any ferries except those established and maintained in accordance with the provisions of said chapter, it is clear that Gear is not within its provisions. Gear's ferry depends solely on the legislative grant or charter, and the extension thereof. That the grant of a ferry franchise by the legislature of a State, unless limited by some general law, or some restrictive provision in the grant itself, is necessarily exclusive to the extent of the privilege thus conferred, is well established law, and recognized as such in the case of *Mills et al.* v. *The County of St. Clair et al.* 2 Gilm. 226. This implies that the exclusive privilege extends not beyond the terms of the grant itself, and this inference is greatly strengthened by considering what is stated in the same case on the 227th page. "The rule of construction of private grants, if the meaning of the words be doubtful, is that they shall be taken most strongly against the grantor. An opposite rule prevails in cases of grants made by a sovereign power; where there is no doubt the construction is made most favorably for the sovereign, and most strongly against the grantee." Again, on the 228th page, same, it is said: "But public grants should not be extended by implication, in favor of the grantee beyond the natural and obvious meaning of the words employed, even if by such construction the object of

the grant is utterly defeated." The same doctrine is reasserted on page 235: "A doubt, if well founded, determines the question in favor of the grantor, the sovereign power."

Let us test Gear's charter or grant by these rules. The charter is in these words: "Be it enacted by the people of the State of Illinois, represented in the General Assembly, that Hezekiah H. Gear, of the county of Jo Daviess, is hereby authorized and licensed to keep a ferry across the Mississippi river, at and from a point in said river, in the county of Jo Daviess, and opposite the point of "Tete de Mort," in the territory of Iowa; and the said Gear, his heirs and assigns, shall have the right of having, maintaining, and using a ferry across the said river, at the place before mentioned, and to have and receive all advantages and emoluments, arising from the use of said ferry, for and during a period of ten years; provided, however, that the county commissioners' court of the county of Jo Daviess, shall have the right to assess an annual tax upon the said ferry, equal to that levied upon other ferries severally situated in said county."

Under this charter, it is contended that Gear has the exclusive right of ferriage for three miles up and down the Mississippi river, and that for an infringement of his exclusive privilege he is entitled to the penalty provided in section 11, chapter 42, R. S. of 1855, viz: a forfeiture of the boat; and justifies the seizure on those grounds exclusively. The charter gives no such rights, or of three miles exclusive privilege, or of forfeiture; it is a mere common law franchise, created by said charter, and must be governed by common law principles, and not by general statute law. No extension thereof, by implication, is admissible, as is shown by the authorities above cited, and the following sustaining the ones already cited, to wit: Dy. 262, a; Cro. Car. 169; 6 Peters, 138; 11 id. 535; 3 id. 289; 4 id. 168; id 514.

If Gear, then, takes nothing by implication, but is confined to a strict construction of his grant, it follows that only a landing is secured to him by his charter, and not any thing above or below the point selected by him as his landing, exclusively.

The proof shows, in this case, another and entirely different ferry from that claimed by Gear. Gear's ferry extends across the Mississippi river to the "Tete de Mort," in Iowa, while Bullerdick's ferry extends across the Mississippi river to the Whitesides' ferry landing, about one mile below the "Tete de Mort."

Now, it was decided in the case of *Tripp* v. *Frank*, 4 T. R. 666, that the grant of an exclusive ferry between A. and B. did not exclude a ferry between A. and C.; and although one may accidentally injure the other, yet, the *termini* being different, they are different ferries in contemplation of law.

That is precisely the case at bar; the landing is the same in Illinois, but Gear's landing in Iowa, is at "Tete de Mort," and Bullerdick's in Iowa, is at the old Whitesides' ferry landing, one mile below. They are different ferries, and at common law, the latter is no infringement of the exclusive rights of the former.

But, even if there were an infringement of Gear's rights, his remedy must be a common law remedy, as his charter gives only a common law franchise, and gives no remedy whatever for disturbance or interference with the franchise; the rule being that when the statute itself gives no remedy, the common law remedy must be pursued.

III. We see from the act establishing Gear's ferry (already quoted), another strong reason why it should not be embraced in the clause of section 10, chapter 42, R. S. of 1845, under consideration. Said chapter carefully guards the public interests, not only by requiring bond with approved security, but by requiring a sufficient number of boats, sufficiently equipped and manned to carry safely all that the public exigency may require. In the case of *Lombard* v. *Cheever*, 3 Gilm. 474, the court says: "It is not the mere license to keep a ferry, which invests the person licensed with the right to seize boats &c., run at or near such ferry. That right matures only upon his exercising his privilege, conferred by the license, by establishing a ferry, and putting it in operation for such purpose, doing every act required by law." This clearly refers to

the acts required by the general law, for the case partly turns on the failure to pay the license fee required, and includes in the words "every act required by law," the paying license fee, giving bond, putting on a sufficient boat or boats, sufficiently equipped and manned, the posting of rates of fare as required in section 7, in short, a full and perfect compliance with the law on his part before he could claim the penalty under section 11 of said act. It seems then, there is a relation between the sections of such a nature, that without a compliance with all the preceding sections, he cannot avail himself of the provisions in section 11, and the compliance with the former provisions is a matter of proof on the part of him who claims the penalty under section 11 of said act.

The court will observe, that Gear's charter requires, on his part, the performance of none of those acts, required by the general law; and if without first complying with the provisions of the general law, he may seize, and forfeit boats, it is impossible to say that even the keeping a skiff upon the route would not be a sufficient compliance with the terms of his charter, to enable him to do so, since his charter has no specific requirements as to the nature of the ferry to be kept, or the manner of keeping it.

If it be said, however, that his duties, although not defined by his charter, are clearly defined by common law, and that a compliance with the common law requirements is both necessary and sufficient, we answer, certainly the requirements of the common law, of a common law franchise, such as we claim this to be, are clearly defined; but the common law gives no such penalty as claimed in this case, nor is it claimed under the common law, but under the general statute, with the requirements of which it is admitted there has been no compliance in this case.

We, therefore, insist, that the owner of a franchise cannot claim that its duties are regulated by common law, and that its liabilities to the public are common law liabilities, which can only be enforced against it by common law remedies, while at the same time it can avail itself of statutory remedies provided

under the general law, against the public or individuals. It must receive the same measure it metes out to others; if it seeks its remedies under the statute, it must first comply with the terms of the statute; in the language of the Supreme Court, in the case before cited (Gilm. 474), "doing every act required by law." The word "law" in the clause cited, must, from its connection, refer to our general statute relating to ferries, as contained in chapter 42, R. S. '45, and must also be understood in the same sense as the same word occurring in sections 2 and 10, of the same act in the phrase "according to law;" and if this be so, it follows clearly that a compliance with that general law in all its provisions is a prerequisite to the claiming of penalties and forfeitures under section 11, of that law.

But the appellant does not even claim a compliance with these provisions, still less, does he attempt to prove such compliance; yet he claims the right to forfeit boats, under section 11 of that act, notwithstanding the decision already cited.

IV. Had the court below taken the above view of Gear's rights under his charter, the demurrer to the 5th plea of defendant below would have been sustained. The appellee is not assigning errors, and if he were, he would be estopped from assigning as error the over-ruling said demurrer, since on his application, it was withdrawn and replications filed by leave of the court. It may be proper, however, to refer to the over-ruling of said demurrer, in order to show that the ruling of the court below was most favorable to the appellants; that the ruling was such in fact, as let in the whole defense of said appellants, and brought the whole decision within the peculiar province of the jury, to be decided as a question of fact, whether admitting Gear's right to seize and forfeit boats, under the 11th section of chapter 42, R. S., he had made such a case in fact, as would warrant such a seizure. The jury passed upon this question, and decided against the appellants, and whatever errors in the construction of the law were made by the court below, were, as we view it, made in

favor of appellants, and are no ground for reversing the judgment. If we are correct in this view of the case, then, the verdict of the jury must stand, if the evidence adduced on behalf of appellants is sufficient to sustain it, even though this court should think there was a preponderance of testimony on the other side ; for in all cases of conflict of testimony, the jury must decide on credibility of witnesses, and this court seeing only the record, cannot say therefrom, that the jury decided other than right.  19 Ill. 158, 274, 363 ; 20 id. 93, 191; 22 id. 494; 24 id. 48 ; 25 id. 124; 27 id. 20 ; 17 id. 175 ; 15 id. 35.

If, then, this case be reversed by this court, it will not be on the evidence, but the reversal must rest solely on questions of law.

V.  It is assigned as error, that the court erred in admitting as evidence to the jury, the record and proceedings of the board of supervisors of Jackson county, Iowa, and the license granted by said board, and each of them.

It is difficult to see how that testimony could have been refused, on the trial of the issues, one of them being under the fourth replication (as amended), to defendant's fifth plea the very existence of the Iowa ferry, under which plaintiff below justifies the running of said boats, as alleged in said replication.

The evidence was clearly admissible under that issue, being both material and relevant.ⁱ  Nor can appellant object to the issue in this court, having failed to do so in the court below, as he might have done by demurring to the amended replication.

Having failed to demur to said amended replication, and having taken issue thereon, denying the facts stated, he thereby admitted its sufficiency in law, and also admitted that the facts, if proved, would be a good answer to his fifth plea.   This left no question of law for the court, but substituted one of fact for the jury, and having put us on proof of the facts by his traverse, the court could not refuse to allow the best evidence of those facts, the authenticated records, to go to the jury on that issue.

VI. It is assigned for error, that the court erred in sustaining the plaintiff's demurrer to the first rejoinder to the fifth replication. By reference to said rejoinder the court will see that it does not traverse any material fact stated in the replication which it professes to answer, but attempts to raise an issue of law, on the question of legal authority, thus usurping the office of a demurrer. The rejoinder was no answer to the replication, and the demurrer was, therefore, properly sustained.

VII. Error is assigned, on giving third and fifth instructions asked by the plaintiff. The third is objected to because it prevents the defendant from forfeiting Gordon & Willis and Burrichter's property for unlawful acts of Bullerdick, the former owner of the boat. The theory of the appellant seems to be, that if Bullerdick, while he was the owner, incurred a penalty and forfeited his property, the one who might claim the benefit of the forfeiture, may wait until a *bona fide* sale of the property and the payment of the purchase money, and then claim the penalty, and forfeit the property, not of Bullerdick, but of the *bona fide* purchasers, without notice.

This seems to us against the policy of the law, and against all the decisions of the courts in analogous cases.

The design of this penal law, clearly is, to punish the transgressor, by taking his property as a forfeiture. But surely, the object of punishment cannot be secured by taking the property of innocent persons for the transgressions of Bullerdick. Besides, the general policy of the law is against penalties and forfeitures; and for that reason, all penal statutes are construed strictly and not extended by implication to reach cases not strictly within their letter. The statute says: " The boat," that is, the boat used in doing the prohibited act. Bullerdick's boat was used in doing the prohibited act, and not the boat of Gordon & Willis and Burrichter; therefore, Bullerdick's boat is the one to be seized for the penalty, and not the boat of Gordon & Willis and Burrichter. When the boat ceased to be the boat of Bullerdick, it was no longer subject to seizure any

more than any other boat leased by its owners to Bullerdick, and placed on his ferry would be liable for Bullerdick's former acts. This is the rule governing executions and attachments, and surely the case of seizure and forfeiture, without process, under a penal statute, will not be viewed with more leniency, or be more greatly favored by the court.

The fact of the sale of this boat to Gordon & Willis and John A. Burrichter, for a valuable consideration long before the seizure complained of, is not controverted: the sale is proved, not only by the bill of sale, but by a witness, who saw the payment of $200, in cash, and knew of the $200 indebtedness, making in all $400 paid for the boat; nor is there any pretense in the proof that Gordon & Willis and Burrichter had notice that Gear had any claim on the boat at the time they purchased; they are, then, *bona fide* purchasers, without notice, and as such entitled to the protection of the court.

Again, by analogy, we show that Gear waived whatever claim he had on said boat, by neglecting to enforce the same, before said sale. A party holding mortgage on land, standing by at a sale, without making known his claim, is estopped from afterwards setting up his title against the purchaser, because the law says he shall not assist in perpetrating a fraud on an innocent person.

Hence, the rule, that he who is silent when he should speak, shall afterwards keep silence when he would speak. Gear, by his silence, when he might have spoken and enforced his rights against Bullerdick, has enabled him to sell to innocent purchasers, and shall not now be permitted to speak, and claim the property of these innocent purchasers for Bullerdick's default. Were the law otherwise, it is easy to suppose a case of collusion, and fraud, which the law would then assist in perpetrating. Suppose Bullerdick, by collusion with Gear, had purposely incurred the penalty, and then afterwards sells to innocent purchasers, Gear standing by, and making no claim; after the purchase is completed, and the money paid, Gear steps in and seizes the boat, and the parties divide

between them the proceeds of the speculation, amounting to $200 apiece. If the law be as claimed by Gear, this could be done, and the innocent purchasers be remediless. This would be making the law an engine of fraud.

We think the third instruction clearly right in limiting the jury to the time since the sale to Willis & Gordon, and John A. Burrichter, and this instruction, also, accords with the issue made in the case, which, by its terms, limits the inquiry to acts of forfeiture after the sale.

VIII. The fifth instruction for plaintiff also complained of, is in accordance with the issue on plaintiff's fourth amended replication to defendant's fifth plea, and states the law clearly, as we understand it, and as it was understood by the court below.

The objection proceeds upon the ground, first, that Bullerdick's rights, under the Iowa license, cannot be considered by the courts in this State, and secondly, on the ground that Bullerdick had no right to carry his friends and neighbors and their property without fee or reward for their accommodation, and not to injure Gear's franchise.

This instruction is based on the proviso, in sec. 9, ch. 42, R. S., 1845, and pre-supposes, that Bullerdick was running a ferry from Iowa to Illinois, lawfully, and not to injure Gear's franchise.

That such was the fact, there can be no doubt (the record from Iowa being in proof, and also, the license granted on the record), unless on the hypothesis, that the jurisdiction of Iowa over the Mississippi river is inferior to that of Illinois.

This court says, in the case already cited (2 Gilm. 197), "a ferry franchise is neither more nor less than a right conferred to land at a particular point, and receive toll for the transportation of passengers and property, from that point across the stream." Gear's franchise had this extent, and no more. No right to land at a point in Iowa, is shown by Gear, and no ferry franchise is claimed by him on that side. Bullerdick, on the contrary, has shown the same right in Iowa that Gear has in Illinois, and the exclusive right of either party to his par-

ticular franchise, is unquestioned. Gear has the right to carry from Illinois to Iowa for toll, but not to bring back for toll, and Bullerdick has an equal right to bring from Iowa, to Illinois, for toll, but not to carry passengers and freight from Illinois, to Iowa, for toll.

Now, the comity of States requires of us the recognition of all border rights, to the same extent that the State law of Iowa requires of its courts; besides, the act of congress also requires a recognition, by the courts of our State, of the law of a sister state, under certain rules and regulations therein expressed.

It is absurd, indeed, to admit that Bullerdick had rights under the laws and proceedings in Iowa, and yet to claim that those rights cannot be recognized by our courts. If our courts refuse to recognize rights existing under the laws of Iowa, Iowa has the same right to refuse to recognize rights existing under the laws of Illinois. Let that be the rule in the courts of both States and border warfare would commence at once; on the establishment of that rule the right of the strongest would be the only right recognized, all which we express in one word, anarchy. So much of Bullerdick's rights, under his Iowa license, as are necessary to make his occupation lawful, being conceded, his right to carry his friends and neighbors, as stated in said instruction, follows by statutory provision.

IX. If our former argument be satisfactory, it follows that the court did not err in refusing the instructions asked for the defendant. Those instructions wholly ignore Bullerdick's rights, under the Iowa license, and ask the court to instruct, that, if Bullerdick ran that boat as an opposition ferry boat, and carried passengers, &c., from Illinois to Iowa, for fee or reward they should find the issue of property for the defendants. These instructions, moreover, ignore the sale to Willis & Gordon and Burrichter; and if the instructions contain the law, it follows therefrom that, if the penalty had once been incurred, it, of itself, without any act of Gear or any other person, changed ownership of the boat, and vested it in the defendants. If this be so, it makes no difference where the

boat was run, after the sale, or by whom, or whether it was run at all; by reason of defendant's absolute ownership, it might be followed and seized anywhere, regardless of personal ownership or personal employment. Nay, more; if by reason of the penalty having been incurred by Bullerdick, the property vested, so that defendants became the absolute owners thereof, they might follow the property into any court, and recover, upon the strength of their title, regardless of subsequent sales or subsequent ownership. If, on the contrary, the title was not complete without a seizure (as probably will be admitted), then it follows that their incomplete title could not afterwards be perfected against *bona fide* purchasers without notice, as seems to be contemplated by said instructions. Take the strongest title that can be given without delivery of possession, an absolute sale of boat to defendants, Bullerdick remaining in possession of said boat, even in that case, by our own statute, defendant's title could not be asserted against a subsequent *bona fide* purchaser of the boat, without notice of the defendant's title; then, if their title by forfeiture be not more favored in law than a title by purchase, it cannot override that of Gordon & Willis and John A. Burrichter, who occupy the position of *bona fide* purchasers without notice.

X. The bill of exceptions shows no exceptions to the overruling of the motion for a new trial. This is necessary, in order that the fifth assignment of error be considered by this court. *Love* v. *Moynehan*, 16 Ill. 277.

Unless the court erred in overruling motion for new trial, the 5th error assigned cannot be inquired into by this court. The only way to prevent judgment on the verdict, after overruling a motion for a new trial, is by a motion in arrest of judgment. No such motion having been filed in this case, and no cause of arrest being shown, judgment on the verdict was a matter of course, and no error.

If it still be held necessary for the bill of exceptions to show that overruling the motion for new trial was excepted to, neither the 5th or the 6th assignment of error is well taken, leaving only the exceptions to the admission of testimony, the

sustaining the demurrer to 1st rejoinder to 5th replication, and the giving and refusing instructions, all of which have already been considered.

We have seen that the ruling of the court was such as to let in their whole defense, leaving only the questions of fact to be tried by the jury.

For this purpose we have seen a penal statute, which should be construed strictly, extended by implication to cover a case, not within the strict letter of the statute, and that when full scope and operation might otherwise be given to every section of the statute by a different, yet a natural and easy construction; we have seen a public grant, viz.: Gear's charter, which should be construed, most strongly in favor of the sovereign (creating, at best, but a common law franchise), extended by implication from a mere landing, three miles up and down the Mississippi, with all the statutory rights as to penalties and forfeitures as against the public and individuals, while at the same time the liabilities of said franchise to the public and individuals were left as at common law; we have seen for this purpose words in one section of the general law, construed to mean differently from the same words in another section of the same general law, without finding in the context, or in the scope and intent of the law as gathered from the law itself, any reason for such difference; we have seen the defendants permitted to sever the general law, the mandatory from the penal sections, taking of said law what suited them, and throwing the remainder away; we have seen that under rulings so favorable to them, and so adverse to the appellee, the questions of fact submitted under issues expressly for their advantage, were by the jury determined against said appellants; and further, that the evidence sustains the verdict so rendered.

That substantial justice has been done in this case, we see no reason to doubt; and it is the rule of this honorable court, that when substantial justice has been done between the parties, the decision will not be reversed for any mere technical errors, even where such exist. If the judgment were reversed, and the cause remanded, we fail to see any hope the appellants

can entertain of a new trial under circumstances so favorable to them, as those under which it has been already decided; since we cannot, for a moment, suppose, that this court can rule more favorably than the court below ruled on the trial.

Viewing it thus, we think this court will best subserve the ends of justice by affirming the decision of the court below.

Mr. Justice Breese delivered the opinion of the Court:

This was an action of replevin in the Jo Daviess Circuit Court, brought by the defendant in error against the plaintiff in error, for a horse ferry boat.

The facts of the case are briefly these: On the 18th of January, 1840, the general assembly of this State passed an act to authorize H. H. Gear to keep a ferry across the Mississippi river. It is of one section, and provides that H. H. Gear of the county of Jo Daviess be authorized and licensed to keep a ferry across the Mississippi river at and from a point on said river in that county and opposite the mouth of "Tete de Mort" in the territory of Iowa, and that he and his heirs and assigns should have the right of having, maintaining and using a ferry across that river at the place mentioned, and to have and to receive all advantages and emoluments arising from the use of the ferry for the term of ten years, provided that the county commissioners' court of Jo Daviess shall have the right to assess an annual tax upon the ferry equal to that levied upon other ferries similarly situated in that county. By an amendatory act passed February 8, 1849, the term was extended to thirty years.

On or before the 10th of August, 1862, the county authority of Jackson county, Iowa, licensed the plaintiff, now appellee, to operate and run a ferry from Whiteside's landing, in Jackson county, across the Mississippi river to the State of Illinois, and to carry freight and passengers, cattle and teams, from that landing in Iowa to Jo Daviess county in this State. Under this authority, the plaintiff procured a ferry boat and ran it

7 — 34th Ill.

from Whiteside's landing to the Illinois shore, at defendant's landing, and received the usual rates of fare from the Iowa side, and, occasionally, from passengers from the Illinois side.

The defendant deeming this an infraction of his franchise, which he claimed to be exclusive for three miles up and down the river, forcibly seized, and took into his possession, the plaintiff's ferry boat and moved it to Galena and there kept and detained it, refusing to deliver it up on demand made by the plaintiff. Hence the action.

Without considering the pleadings or evidence in the cause, or the specific errors assigned, or the instructions, it is only necessary to say, that by the defendant's charter, he had no right to seize the plaintiff's boat. Under the general law regulating ferries, by section eleven (Scate's Comp. 526), a person running a ferry within three miles of an established ferry, without authority, was liable to forfeit his boat to the owner or proprietor of a ferry established under the provisions of that act, or which had been confirmed as such by the tenth section of the act. Ferries growing out of that law, had the rights and privileges granted by it on the proprietor complying with its provisions, one of which rights and privileges was, "after a forfeiture had occurred, to enter upon and take possession of the boat or craft to his own use." The legislature did not intend the forfeiture should be declared by the party injured. That must be done by some judicial proceeding, and when done, the proprietor of the established ferry could take possession of the boat. No man can be a judge in his own cause. If permitted, violence and bloodshed would be the consequence. Without a forfeiture having been declared by some court of competent jurisdiction, the taking by appellant of this boat was wrongful and tortious.

But, we do not conceive, the appellant can resort to this summary remedy as he claims not the franchise under the public law, but by and under the act we have quoted, by which act no power to declare a forfeiture is given to him, nor is any exclusive right for any distance, either up or down the river, bestowed upon him. His remedies, if he has an exclu-

sive franchise, must be found in the rules of the common law, which are ample and efficacious in his case.

But it may be observed further, that if the appellant's franchise is governed by this public law, then it must be considered that law only intended to reach parties who should, without authority, run and operate a ferry boat across our rivers. Now the appellee was not in this predicament. He showed a license from the proper authority in Iowa to establish this ferry, and run his boat from Whiteside's landing in Iowa to the Illinois shore. This authority is deserving of the same respect and consideration, and is entitled to equal efficacy with the authority granted by this State to the appellant. The middle of the main channel of the Mississippi river being the boundary between this State and Iowa, the authorities of this State had no greater right to grant a franchise to operate and be enjoyed beyond our boundary than Iowa has to grant one to be enjoyed beyond her boundary. If the appellee, in using his franchise, injures the appellant, or trespasses upon his landing, he has a remedy by action at the common law, but he cannot be the judge in his own case, declare a forfeiture, and seize. and take into his possession the thing he adjudges to be forfeited. There is an important fact to be established before a forfeiture can be declared, and that is, has the pretended ferry authority, — is it a legally established ferry? This question the owner of the rival ferry cannot determine for himself; it must go to the court. He cannot be his own judge, and at the same time the executioner. This is supposed to be a government of law, and all must await its sometimes tardy movements.

The verdict passed in this case for the plaintiff, and we think correctly, and affirm the judgment upon the verdict. The appellant has no ground to stand upon, as shown by this record.

*Judgment affirmed.*