## Scott v. Gilkey.

1. *Payment.*—A payment is the discharge, in money, of a sum due, and it can only be made in money, or that which the creditor accepts as money, or in lieu of it.

2. *Authority to Receive Payment.*—The fact that notes made payable at a bank are placed there by the payee, and there found by the maker, without any notice that they were not left there for collection, is sufficient to show an authority to receive payment, and to justify the maker in paying.

3. *Authority of an Agent to Accept Anything but Money as a Payment.*—An agent having for collection a promissory note, or other money demand, can not rightfully accept anything but money as payment, without express authority from his principal.

4. *Payment—Note Left for Collection—Authority to Accept Another Note in Payment.*—If a maker takes up his note left in a bank for collection, by giving to the banker his note for the amount, he does so at his own risk of the banker's failure to pay the amount over to the payee of the

Scott v. Gilkey.

note so taken up, unless the bank's action is really and *bona fide* a loan, the money being in hand subject to the proposed appropriation and actually transferred to the creditor's account, and the burden of proving these facts as between the creditor and the debtor is upon the latter.

5. *Payment by Delegation.*—The payee left a note in a bank for collection and the maker took it up by giving his note for the amount. The bank having failed the payee brought suit against the maker. *It was held,* that had there been an actual transfer of the money belonging to him in the bank, as would have been an acknowledgment by the bank that it had received the amount from the maker, then under the authority the bank had to receive payment in money, it would have been a payment by delegation.

Memorandum.—Action of replevin. Appeal from a judgment for plaintiff, rendered by the Circuit Court of Edgar County; the Hon. FERDINAND BOOKWALTER, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892. Opinion filed June 5, 1893.

The opinion of the court states the case.

APPELLANT'S BRIEF, ANTHONY THORNTON, ROBERT L. McKINLAY AND J. F. VAN VOORHEES, ATTORNEYS.

" Possession, unattended by circumstances which, in a reasonable mind, ought to excite suspicion or distrust, or put the party on inquiry, is *prima facie* evidence of title to a promissory note." McConnell v. Hudson, 2 Gilman, 648; Jewett & Root v. Cook, 81 Ill. 263; Curtiss v. Martin, 20 Ill. 557.

" In ordinary cases, the mere production of a bill of exchange, note or check is, in general, sufficient to warrant the payment to the person who produces it." Chitty on Bills, 7 Am. Ed. 281. The delivery of a note, unindorsed, to an agent for collection, authorized the agent to receive payment. Padfield v. Green, 85 Ill. 530.

" A demand of payment, by an agent having any parol authority, or the mere possession of the paper, is sufficient." Bank of Utica v. Smith, 18 Johns. 239; see Story on Agency Sec. 104; Williams v. Walker, 2 Sandf. Ch. 325; Yazel v. Palmer, 81 Ill. 85.

The taking up and cancellation of the notes, and the substitution of other negotiable paper, is equivalent to a pay-

ment.  Wilkinson v. Stewart, 30 Ill. 58; Critzer v. McConnell, 15 Ill. 171.  "Where the debtor's own negotiable note is given for a pre-existing debt, it is *prima facie* evidence of payment, but is still open to inquiry by the jury  The reason is that otherwise the debtor might be obliged to pay the debt twice."  2 Greenleaf's Ev., Sec. 520.

"The rule of law is, where one of two persons must suffer loss, he who, by his negligent conduct, made it possible for the loss to occur, must bear it."  Anderson v. Warne, 71 Ill. 22; Noble v. Nugent, 89 Ill. 523.

APPELLEE'S BRIEF, TANNER & TANNER, F. W. DUNDAS AND H. VAN SELLAR, ATTORNEYS.

"A bank at which notes are made payable, but with which they have not been deposited for collection, though they are in its manual possession, is not the agent of the holder to receive payment, and money deposited with it by the payor, to meet the notes when presented, does not constitute payment, but remains his own property."  Chenny v. Libby, 10 S. Ct. 498, 134 U. S. 68.

The general rule is, "An agent is only authorized to receive payment in cash."  See Am. and Eng. Encyclopedia of law, Vol. 18, p. 194; Lochenmeyer v. Fogarty, 112 Ill. p. 572; Harback v. Colvin, 73 Iowa, p. 638; British, etc. v. Tibballs, 63 Iowa, 468.

"Where an attorney or agent receives notes in payment of claims left in his hands for collection, the claims are not thereby paid.  And if the attorney or agent proceeds to collect such notes, the money arising therefrom is at the risk of the debtor, so long as it remains in the attorney's or agent's hands."  Kenny v. Hazeltine, 6 Hump. (Tenn.) 62.

OPINION OF THE COURT, PLEASANTS, J.

This was an action of replevin brought by appellee for two notes of appellant, of January 14, 1891, for $6,650 each, with interest at six per cent, payable to the order of the plaintiff, at the bank of Standiford Brothers in Chrisman, one on or before March 1, 1892, and the other on or before

March 1, 1893. Failing to obtain them under the writ a count in trover was added to the declaration. The cause was tried on the general issue, with a stipulation for the admission of all evidence that would be proper under any appropriate pleading, and a verdict found for plaintiff for $13,863 damages. A *remittitur* of $40 was entered, defendant's motion for a new trial overruled, and judgment rendered against him for the remainder. He here seeks a reversal of that judgment for the reasons assigned, that the finding was against the law and the evidence and that the court erred in the matter of instructions.

The facts deemed material are undisputed. Appellant was a cattle dealer, worth $50,000. On the 14th day of January, 1891, he bought of appellee a 400 acre farm, giving therefor his check on the bank mentioned for $6,700, and the notes in controversy. At his suggestion they were made payable as they were because appellee had intimated that having now sold his farm he thought of going to California, where his son resided, for a visit of indefinite length, and appellant said he might want to pay them before maturity, if he should sell his cattle, and in the absence of appellee, and on the same day were placed and left in the bank by appellee, without indorsement.

About the first of May following, he bought out a drug store at Chrisman, and abandoned the idea of a trip to California. But near the last of August, he did go to Kentucky on a visit, and did not return until the first of October, when he was surprised to learn that in the meantime appellant had obtained possession of the notes from Standiford Brothers, and they had absconded.

Appellant was the only accessible person who knew how he obtained them, which he stated as follows : " Standifords told me if I run short of money to come and they would try to supply me with what money I needed in my business. I went to the bank on the 4th day of September and asked them for $3,300, and they said I could have it and I got it. I borrowed the money there and took those notes and gave my check for the interest and my notes for the principal. I

gave the notes to Standiford Bros., signed by myself. I paid in cash, I think, over $500, altogether. I have the checks in my pocket. One check was for $259.25 and the other for $264.50. For the notes in controversy I gave them, I think, one note for $5,000, one for $1,650 and one for $6,650. The notes that I paid off drew six per cent interest, and those other notes that I have drew five per cent interest from date. * * * Alexander Standiford gave me the notes, which I now have."

It appeared, more particularly, that he got the first on September 8th, upon giving his check for the accrued interest and for the principal, his two notes of that date for $1,650 and $5,000, respectively, at six months, and the other on the 14th, giving his check for the accrued interest and for the principal, his note of the 12th (which was a Saturday), for $6,650, at one year. These notes were payable to the order of Standiford Brothers, and when produced on the trial appeared to bear interest at *five per cent* "from due." He testified that when he gave them, no money was counted in his presence, and that he paid none nor gave any check except for the interest. It did not appear that he was credited with anything on account of those notes upon the books of the bank, upon any pass book, nor was there any evidence tending to show how much money was then in the bank; but the notes to appellee, then surrendered, were stamped by Standiford Bros. as "paid" and the amount credited on their books to appellee. They sold and assigned each of the new notes to Bibo & Co., bankers at Paris, within twenty-four hours after they received it, and on the 26th of September disappeared. They had been doing a banking business at Chrisman for about twelve years. Latterly, their character and standing had been discussed and questioned, and there was talk of starting a new bank there. Appellant testified: "I couldn't tell anything about whether the Standifords were weak financially. I had heard it talked about for over a year, but it seemed like nobody believed it;" and that appellee had expressed to him his confidence in them, and did his business there.

Soon after appellee learned that appellant had the notes in controversy he demanded them of him, and being refused, brought this suit.

It is clear that unless the transaction which took place between appellant and the Standiford Brothers, as stated, amounted to a valid payment of the notes in controversy as against appellee, he was entitled to recover. Until appellant got them in that transaction, the right of property and of immediate possession, were confessedly in the appellee; and though their subsequent actual possession by the maker after they had become payable, without further proof, would raise the presumption of payment, yet when the evidence disclosed the means by which he obtained them, his claim of right must rest upon the legal sufficiency of those means to establish it, and not at all upon any presumption from the mere fact of possession.

Upon the question of their sufficiency, appellee contends, first, that the bankers were not authorized to receive payment for him; that the notes were left with them for safe keeping merely, and that appellant so understood. He testified that he told appellant, when they were being drawn up according to the latter's suggestion and for the reason stated, that in case he should go to California, he would make an arrangement by which they could be paid in his absence if appellant wished to pay them, but that he made no such arrangement because he did not go to California. The scrivener who drew up the notes corroborated him as to this statement; and the fact that he did not indorse them is claimed to be strong evidence in support of his contention.

Appellant testified that when appellee left them at the bank he said to Standiford: " Let Mr. Scott pay these notes whenever he wants to, and put the money to my credit," and was corroborated as to that by two other witnesses, against the positive denial of appellee.

This contradiction is solely upon the question of express authority, which we deem immaterial, since we think authority no less sufficient, was proved by the facts that the notes were made payable at the bank, were placed there by

the payee, and there found by the maker at the time of the alleged payment, without due notice that they were not left for collection. Wallace v. McConnell, 13 Peters 150; Ward v. Smith, 7 Wallace (U. S.), 451. No further arrangement by appellee was required. The fact that the paper was then in the possession of the bankers was *prima facie* sufficient. Stiger v. Bent, 111 Ill. 338, and cases there cited; Yazel v. Palmer, 81 Id. 85; Story on Agency, Sec. 104. Without that, appellant could have done no more than, by depositing or tendering the amount due, exonerate himself from liability for costs of suit and interest for delay. Wood & Co. v. Merchants S. L. & T. Co., 41 Ill. 267, and cases there cited on p. 270; Yeaton v. Berney, 62 Ill. 61, and the Federal cases *supra*. Where a note is surrendered to the maker its indorsement by the payee is unnecessary. Padfield v. Green, 85 Ill. 530.

But the full extent of the authority of Standiford Bros. in the premises, was to receive payment of the notes, and only in that case to surrender them to appellant. The question then is, did they receive it.

Bouvier defines payment as " the discharge in money of a sum due," and we understand it to be elementary law, that it can be made only in money, or that which the creditor accepts as money or in lieu of it.

Whether anything else received is so accepted, is a question of fact, depending on the intention, and provable directly or circumstantially, like other such facts, or legally presumed by the court. 2 Greenl. on Ev., sections 116 and 119. This case is not embarrassed by any such question. It is not claimed that appellee received anything in payment, unless by his agent, and in the manner already stated.

An agent for collection of a promissory note or other money demand can not rightfully accept anything but money, as payment, without express authority from his principal. Story on Agency, sections 98 and 99; Padfield v. Green, 85 Ill. 530; 2 Parsons on Cont., (5th Ed.) 615–6 and notes *l, m, n, o;* 18 Am. & Eng. Enc. of Law, 194 and notes; Lochenmeyer v. Fogarty, 112 Ill. 582. The authorities cited in the

brief for appellant, Ralston v. Wood, 15 Ill. 159, Wilkinson v. Stewart, 30 Id. 58, Witherby v. Mann, 11 Johns. 518, and 2 Greenl. on Ev., Sec. 520, are cases of acceptance by the creditor himself of something other than money; and we know of none in conflict with those above cited, upon the extent or limit of an agent's authority. In this case it is not claimed that Standiford Bros. had special authority to receive anything but money as payment.

What did they receive? The only evidence in the record bearing upon this question is the statement of appellant, and is therefore not to be strengthened in his favor by construction. He says: "I gave my check for the interest and my note for the principal." Again: "I paid in cash, I think, over $500, altogether." He produced the checks he gave, amounting together to $523.75, and said: "At that time I paid no money into the bank except those two checks exhibited here. They were all the checks that I gave." Again: "For the notes in controversy I gave them, I think, one note for $5,000; one for $1,650, and one for $6,650," the sum of which is the exact amount of the principal of those he took up. And still again: "The notes that I gave Standifords for the notes of Mr. Gilkey, are still outstanding against me."

In Lochenmeyer v. Fogarty, *supra*, the Supreme Court held and declared it to be settled law that "an attorney, in the absence of special authority, has no right to give up his client's notes for paper payable to himself, nor any "authority to receive anything but money in payment of his client's debts," citing Nolan v. Jackson, 16 Ill. 272, and 2 Parsons on Notes and Bills, 614, note *c*. There, as here, the agent had assigned the notes he so received, and they had been paid by the maker. We know of no recognized distinction in respect to this power between attorneys-at-law and bankers or other agents for collection of money demands.

That case, then, would seem to be decisive of this, unless one of the theories of the defense here, that the notes to Standiford Bros. were given for the money which was borrowed from them and immediately paid back, or credited

to appellee by them, for those in controversy, can be maintained upon the evidence in the record. If it can, we are unable to see why it was not applied to protect the debtor against double payment in the Lochenmeyer case cited, and would not practically abrogate the rule there announced. The question would arise only when the agent failed to pay over to his principal, and it may be presumed to be of frequent occurrence that banks holding paper for collection surrender it to the debtor on receipt of his note or other satisfactory security for the amount, as upon payment in money then loaned him for that purpose on such security, where no money is produced, but the principal's account is properly credited on their books. We apprehend, however, that this is at the debtor's risk of the bank's failure to pay, unless the transaction is really and *bona fide.* a loan, the money being in hand, subject to the proposed appropriation and actually transferred to the creditor's account, or the arrangement is made with his consent, expressly given or clearly implied by the course of his dealing with the bank or by its general course known to him; and the burden of proving these facts, upon the question of payment, as between the creditor and the debtor, would rest upon the latter. Failing to prove them, he would be held to have taken the risk of the bank's failure to pay, and left to his recourse upon its agreement. In Wood & Co. v. Merchants Savings etc. Co., 41 Ill. 271, the Supreme Court, adopting the words of Justice Marcy in Olcott v. Rathbone, 5 Wend. 494, say: " We think the better rule is to consider nothing as an actual payment which is not really such, unless there be an express agreement that something short of a payment shall be taken in lieu of it."

The language of appellant above quoted plainly imports that he did not pay money for the notes in controversy, except as to the accrued interest thereon, and that he did give his notes payable to Standiford Bros. for them. Neither of itself, nor in the light of antecedent or attendant circumstances, does it seem to admit of construction. He testified to no word said or act done by either of the parties to the

transaction indicating that he gave them for borrowed money. The mere act of giving them and at the same time receiving those he had given to appellee for the same principal amount would be more consistent with a mutual understanding that they were given directly for the latter (whether called exchange, substitution, commutation or payment) than for borrowed money applied in payment of them. Some explanatory circumstance; something said or done besides, is necessary, to suggest the idea of a loan. But nothing here appears, more than would have been expected if the notes had been confessedly received as payment. It is true that on his cross-examination appellant said: "I paid the notes in controversy by borrowing money of Standiford Bros. and paid them, and had the money placed to Gilkey's credit." This, however, adds nothing to the facts he had previously stated, except that he had the credit to Gilkey entered upon the books of the bank. The rest is his conclusion that these facts constituted payment in money. In all of his lengthy examination in chief, detailing the particulars and circumstances of this transaction, he had spoken of but one loan of money from Standiford Bros., which was of $3,300, made four days before he took up the first of the Gilkey notes, and presumably for use in his business as a cattle dealer, as it was in respect to his need for that purpose that they had promised to accommodate him. That sum was doubtless credited to him on their books, for he was allowed to check against it. We may presume his checks for the interest on the Gilkey notes were charged against it. Had he supposed that he was actually borrowing the two larger sums of $6,650 each, for which he so soon afterward gave his notes, he could hardly have failed, while speaking of such transactions, to mention these as among them.

That was the question. There was no doubt that he had given his notes to Standiford, and we think it was for him to show that he gave them for borrowed money and that with it he paid them the principal of the Gilkey notes. As we have seen, however, he did not then intimate that any such idea was in his mind. On the contrary, he three times

distinctly stated that he gave them "for the notes in controversy," and once besides that he paid no money except for the accrued interest.   He may have supposed this amounted to payment in money.   And so it may, as between him and them.   A promissory note is sufficient *prima facie* evidence of a loan between the original parties.   2 Greenl. on Ev., Sec. 112 and notes.   But a loan, in both the legal and popular sense, is a bailment, including delivery of the subject where it is susceptible of it, to be returned *in specie* or (as in the case of money) in kind.   Here appellant never for an instant had possession or control of an actual dollar of this amount; but only the agreement of Standiford Bros. to place it to Gilkey's credit, and the actual entry of such credit on their books.   Had there been an actual transfer of money belonging to him into their hands, and such an entry made as would have been an acknowledgment by them that they had received the amount from him, then under the authority they had from appellee to receive payment in money, this might have been a "payment by delegation," and binding upon appellee.   2 Parsons on Cont., 625 and note U.

Here it does not appear that appellant had money to anything like the amount of these notes in their hands, or any such credit on their books, or that any transfer of such money or credit was made to appellee or any such acknowledgment by Standiford Brothers.   Their books were in the hands of a receiver.   Appellant introduced them in evidence, and Mr. Thomas, who had been their book-keeper, as a witness.   They showed the receipt on September 8, 1891, of appellant's notes for $5,000, and $1,650 at six months, but no credit to him as for money, and the charge to him of the check for $259.25; and appellee's account, in the ledger, showed a credit to him of that date of $6,909.25.   They also showed the receipt on September 14, 1891, of appellant's note of the 12th, for $6,650, at one year, but no credit for money, and also the charge to him of his check of the 12th for $264.50; and in appellee's account, on the ledger, a credit to him, on the 14th, of $6,914.50.   But the journal, containing the original entry, from which this item of credit was so transferred to

the ledger, showed it as follows:  "September 14th, Monday. "W. T. Gilkey, by Josephus Scott, note and interest, $6,914.50."  The record does not show the journal statement of the credit of September 8th, but we may well presume it was like this, a credit by appellant's note and interest.

These entries were in accordance with the facts as stated by appellant, and prove that Standiford Brothers, like him, understood they were receiving as payment of the principal of the Gilkey notes, not money, but his notes, payable, not to him, but to their order; and that they did not credit Gilkey nor charge themselves with money, as having been received therefor, but with Scott's note for its amount.  Their acceptance of these notes as payment, without special author. ity from appellee, would not bind him.  Nor would their assignment of them before maturity and for value without his knowledge or consent, to an innocent holder.  He did not give such authority, nor consent to, or know of such assignment.  Nor did he ever consent to accept Standiford Brothers as his debtors in place of appellant, without proper payment first made by him to them.  That he trusted them as collectors and depositaries is immaterial.  He did nothing to mislead or deceive appellant as to the extent of their authority, nor put it in their power to perpetrate the fraud by which one or the other must suffer.  It was appellant's duty to ascertain that appellee authorized the receipt of these notes in payment.  Failing to do so, he gave them at his own risk of their making payment to his creditor, and can not be held innocent.  Cooley v. Willard, 34 Ill. 74.  There was nothing here to warrant his presumption of such author- ity, as was the case in Noble v. Nugent, 89 Ill. 523.

The facts, proved beyond question, in our opinion inevi- tably established appellant's liability in this action.  He ob- tained possession of the notes in controversy wrongfully, as to appellee, or at least his refusal to surrender them on appel- lee's demand, was a conversion of them.  The finding to that effect was not only well supported, but required by the evi- dence, irrespective of any question of good faith on the part of appellant, which we therefore refrain from considering.

For the same reason there is little need to notice the action of the court in reference to instructions. The principal errors are incidentally indicated in what has been said. The hypothesis of the argument stated in the second given for plaintiff was not warranted by the evidence, as to the checks; and the fourth should have been qualified by the inclusion of due notice to the maker that the notes are not left for collection. The third, seventh, twelfth and thirteenth of the defendants refused, should have been given; but the conclusion of the fifteenth was too broad, and the others were either materially wrong or of such a character that their refusal could not have prejudiced his case. Some of those given were more liberal than the law or evidence warranted. We have attempted to show that there was really no evidence that he in good faith borrowed or supposed he borrowed any money on his notes to Standiford Bros. of September 8th and 12th, and are of opinion that under any proper instructions the verdict should have been for the defendant.

But we believe from the evidence that there was a valid payment of the interest on those in controversy, to the time they were taken up. Authority to receive the whole includes authority to receive a part. There is nothing to rebut the inference that appellant had funds in the bank sufficient to meet the checks shown. They were expressed to be for interest on these notes, and effectively appropriated the amount mentioned in them, to the payment of it. They were charged to him and credited to appellee on the books of the bank. This was payment, to that extent, by delegation. The jury seem to have ignored it, misled, perhaps, by the error in the second instruction for plaintiff above noticed, and appellee must look to his agents for it. The *remittitur* of $40, falls considerably short of obviating the error in the amount awarded by the judgment, which must therefore be reversed, at the cost of the plaintiff below, and the cause remanded to the Circuit Court with directions, upon a *remittitur* being made by the plaintiff of $523.75, to enter judgment in his favor on the verdict for the residue, viz., $3,299.25 and costs. In case of a failure to make such

*remittitur* within thirty days after the reinstatement of this cause in the court below, that court is directed to award the defendant a new trial.

Reversed and remanded with directions.