BURLINGTON & HENDERSON COUNTY FERRY COMPANY v. DAVIS.

1. **Municipal Corporation: POWER TO LICENSE.** While the exclusive power conferred upon a city to grant a license does not authorize it to grant an exclusive license, yet such power is conferred when it is authorized to grant or refuse a license.

2. ———: ———: **FERRY.** It is competent for the Legislature to confer upon a city the right to grant an exclusive license to ferry across the Mississippi river.

*Appeal from Des Moines District Court.*

TUESDAY, APRIL 16.

ACTION to enjoin the defendant from operating a ferry across the Mississippi river, between the city of Burlington and the opposite shore. The plaintiff claims the exclusive right to operate a ferry across the Mississippi river at the city of Burlington. It predicates such right upon an ordinance of the city, the first and second sections of which are in the following words:

"SECTION 1. *Therefore, be it ordered by the City Council of the City of Burlington.* That in consideration of the premises, the right to establish and maintain a ferry across the Mississippi river, between this city and the opposite shore in the State of Illinois, is hereby granted to said 'Burlington and Henderson County Ferry Company,' for the term of ten years from this date, without charge for wharfage or other tax, license or assessment against the company; *Provided,* said ferry company shall, in all other respects, comply with the provisions of Ordinance No. 14 of the Revised Ordinances of this city, entitled 'Ferries,' during said term of years. If the said ferry company fails to run their boat for ten days, when the river is navigable, all the above privileges shall be forfeited; but in case of breakage a reasonable time shall be given for repairs.

"SECTION 2.    That the rights and privileges granted to said Burlington and Henderson County Ferry Company are exclusive, and no other license to run a ferry across said river shall be granted by the city of Burlington to any other person, company or body corporate for the term of ten years from this date; *Provided,* said Burlington and Henderson County Ferry Company shall comply with the conditions and restrictions of said Ordinance Fourteen of the Revised Ordinances of the city, entitled 'Ferries,' or other ordinances hereafter adopted for the regulation of ferries."

The defendant does not deny the existence of such ordinance, but claims the right to operate a ferry notwithstanding it.    His right is predicated upon the fact that he is duly licensed under the Laws of Illinois, and by the proceedings of the proper court of Illinois.    He denies that the city council of Burlington have the power to exclude him from such right.    He sets up also by way of defense that the plaintiff has violated the terms of the ordinance and forfeited its rights thereunder.    The plaintiff demurred to the defendant's answer, and the demurrer was sustained.    The defendant appeals.

*Hall & Baldwin* and *Blake & Hammack,* for appellant.

*J. & S. K. Tracy* and *P. Henry Smyth,* for appellee.

ADAMS, J.—The city council has only such power as has been given it by the Legislature.    To determine whether the power to grant an exclusive right to operate a ferry at the point mentioned has been given, we have to inquire whether any act has been passed purporting to give such power, and if so, whether the Legislature had power to pass such act.

The act of the Legislature upon which the plaintiff relies is found in the charter of the city of Burlington, approved June 10, 1845.    Section 15 of the Charter provides that "the city council shall have power, and it is made their duty to regulate by good and wholesome laws and ordinances, all fer-

ries across the Mississippi river from said city to the opposite shore. And the said city council shall have full and exclusive power to grant or refuse license to keepers of ferries from said city across the Mississippi river to the opposite shore."

The defendant denies that the charter purports to confer upon the city council the power to exclude him from the operation of his ferry. In the first place it is said that the charter purports to grant the exclusive power to license ferries, but not the power to grant an exclusive license to a ferry. In the second place it is said that the power granted is to license ferries *from* the city, and that even if the city council had the power to grant an *exclusive license* to ferry *from* the city, such license would not exclude the defendant's right to ferry from the opposite shore.

As to the first point, it may doubtless be said that the exclusive power to grant a license is not the same as the power to grant an exclusive license. By granting the exclusive power to license, the Legislature doubtless designed to provide that the city alone should exercise such power. *Fanning v. Gregoire*, 16 Howard, 524. The power to grant an exclusive license must be found, we think, if at all, in other words of the charter. Upon looking into it, we find that it conferred the "power to grant or refuse license." Herein, we think, was conferred the power to grant an exclusive license. The power to license necessarily includes the power to prohibit unlicensed persons from doing the acts authorized by the license. The power to refuse license necessarily gives the power to limit the issuance of licenses. And if the city council has power to limit the issuance of licenses, we see no reason why it may not, in its discretion, and with a view to promoting the public interest, bind itself by contract with a person licensed to issue no other license.

1. MUNICIPAL corporation: power to license.

The mere power to license, or to license and regulate, does not, it seems, include the power to create a monopoly. *Chicago v. Rumpff*, 45 Ill., 90; *Logan & Sons v. Pyne*, 43 Iowa,

524. In the latter case, a city ordinance was held void, which was made to confer upon the plaintiffs the exclusive right to run an omnibus line. The power to license useful occupations is conferred upon a city council to enable it the better to regulate the mode in which the occupations should be exercised. For the purpose of such regulation, any reasonable restrictions may be imposed; but the exercise of the occupation must be open to all who are willing to comply with the terms and conditions. *Chicago v. Rumpff*, above cited. This is the rule where the mere power to license is conferred. But where the power to refuse licenses is conferred, we think that such rule is not applicable.

We come next to consider that the charter purports only to confer the power to license ferries *from* the city to the opposite shore.

The defendant claims that he does not need a license from the city, because his ferry is not maintained from the city, but from Illinois. He claims that the right which the plaintiffs can exercise under the charter is different from the right which he seeks to exercise, and that the plaintiff's license, therefore, does not exclude him.

The Legislature, in conferring upon the city council of Burlington the power to license ferries from the city, conferred all the power in that respect which it possessed. It could not give any rights upon the Illinois shore. *Weld v. Chapman*, 2 Iowa, 524; *Gear v. Gear*, 34 Ill., 74. For the same reason the defendant, under the laws of Illinois, could acquire no rights upon the Iowa shore. The fact, then, that the Legislature did not confer more power, is not an indication that it did not intend to confer the power to exclude persons licensed merely under the laws of Illinois. We must then hold that the plaintiffs' license is exclusive, unless the rights conferred by it are different from those which the defendant seeks to exercise; and upon this point we have to say that we do not think that they are. The plaintiffs are operating a ferry between the city of Burlington and the opposite shore,

and the defendant, until he was enjoined, was doing the same thing.

If the license is not exclusive, it must,. we think, be for want of power in the Legislature. The defendant insists that there is such want of power. Upon this point he says that "the Mississippi river, being a free navigable stream, vessels may land at and discharge passengers at any point between high and low water mark, for that they have the same right to touch and make fast at and between these limits, which are a part of the river, that they have to float or anchor in mid stream."

Grants of exclusive ferry licenses, however, are upheld. They rest upon peculiar ground. A ferry is in some sense an extension 2. —: —: of a public road. Whatever objection there may ferry. be to the creation of a monopoly, it is considered as overcome in the matter of a ferry by the consideration of the public necessity or advantage. In Cooley on Constitutional Limitations, 593, the author says: "The States may lawfully establish ferries over navigable waters, and grant licenses for keeping the same, and forbid unlicensed persons from running boats or ferries without such license. This also is only the establishment of a public highway, and it can make no difference whether or not the water is essentially within the State, or, on the other hand, is a highway for inter-State or foreign commerce." The author cites, in this connection, *Conway v. Taylor's Executors*, 1 Black, 603; *Chilvers v. People*, 11 Mich., 518; *Fanning v. Gregoire*, 16 Howard, 524. In *Conway v. Taylor's Executors*, above cited, it was held that the authority to establish and regulate ferries is not included in the power of the Federal Government to regulate commerce, under the Constitution of the United States. In *Chilvers v. People*, above cited, the court said: "Ferries are as clearly creatures of local legislation as roads and bridges; and the establishment and regulation of them are as necessary for the convenience of the traveling and business public." In *Jones v. Fanning*, Morris, 348, a

question arose in regard to the power of the Legislature to grant an exclusive license to ferry across the Mississippi river at Dubuque. The court, after considering the objections urged against the existence of such power, said: "The conclusion to which we are brought on this subject is that the Mississippi river, so far as it affords facilities for transportation, cannot be obstructed or monopolized. It is a common highway and forever free. But, so far as it presents an obstruction to land carriage, it is left to the sound discretion of the Legislature to provide means for surmounting such obstructions by means of ferries, and for this purpose it may even give individuals exclusive privileges, within reasonable limits, when done in good faith, for the purpose of furnishing an indispensable link in the chain of transportation on dry land." Since this decision a large number of exclusive ferry licenses have been granted in this State, and we are not aware that the power of the Legislature has been questioned in this respect, from the time of that decision until it was done in this case.

The point is made, however, by the defendant, that since the decision in *Jones v. Fanning*, a restriction has been imposed upon the power of the Legislature in this respect. We are referred to art. I, sec. 6, of the Constitution of the State. That section provides that "the General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not belong equally to all citizens." The effect of this restriction we need not consider further than to observe that it has no application to the charter in question, unless the constitution is retroactive. The charter antedates the constitution. As to the operation of a constitution it is said in Cooley on Constitutional Limitations, 63: "We shall venture to express the opinion that a constitution should operate prospectively only, unless the words employed show a clear intention that it should have a retrospective effect." The learned author, in the same connection, after commenting upon the rule in regard to the operation of

statutes, says: "We are aware of no reasons applicable to ordinary legislation, which do not, upon this point, apply equally well to constitutions." A similar view seems to have been taken in *Allbyer v. State*, 10 Ohio N. S., 588. We are of the opinion that the provision of the charter in question did not become void upon the adoption of the constitution with the restriction referred to.

One question remains to be considered. The ordinance under which the license is derived provides that if the ferry company fails to run its boat for ten days, when the river is navigable, all privileges shall be forfeited. The answer avers that the plaintiff has neglected for periods of from six weeks to two months, and at various times, to operate its boat; and trade and travel have been driven from the city; and the ferry has not been run for the accommodation of the public, but at the whim of those in charge. The answer, however, does not aver that the plaintiff neglected to run a boat for ten days, when the river was navigable. It is not shown to us, then, that anything has transpired by reason of which, under the ordinance, a forfeiture could be declared.

We think that the demurrer to the defendant's answer was properly sustained.

AFFIRMED.