**Wheeling.**

## MASON v. THE HARPER'S FERRY BRIDGE CO. et al.

### Decided December 18, 1880.

1880
Special Term.

Mason
v.
Harpers Ferry
Bridge Co. et al.

1. The power to grant injunctions in vacation and to require bond to be then given carries with it as a necessary incident the right to hear and determine in vacation a motion to require a new bond to be executed with an enlarged penalty.

2. Upon a motion before a judge in vacation to require of the plaintiff a new injunction-bond with an enlarged penalty, the proper order to make, if the old bond is insufficient, is, that if the new bond is not given within such reasonable time as the court under the circumstances shall fix, after such time the injunction shall be dissolved *until such bond be given.*

3. Equity has jurisdiction to restrain the taking or damaging of private property for public use without just compensation, even though an action at law will lie for the recovery of damages in such cases, after the property has been so taken or damaged.

4. Under the general law, as it existed at the time the plaintiff's ferry was established in 1879, he, as proprietor of such ferry, had the *exclusive privilege* of transporting persons and things across the Shenandoah river within a half mile of his ferry.

5. The unauthorized erection of a bridge for transportation across the stream within a half mile of a ferry already established was as much prohibited by the statute as the establishment of another ferry within the same distance.

6. The right to establish ferries and toll-bridges is in the Legislature, and it could at any time by a repeal of the general law or by special act, but for our Constitution, take away all the exclusive privileges of proprietors of ferries theretofore existing.

7. Under our general corporation-laws a corporation may be created for the construction of a toll-bridge to accommodate travel across a stream, and the construction of such bridge is a "work of internal improvement."

8. Franchises and corporate rights granted indirectly by the State through instrumentalities provided by general laws for such purposes are the same in effect, as if the power conferring such franchises and rights had been exercised directly by the State itself.

9. The Legislature has not either expressly or by implication repealed the general law, in force when the plaintiff's ferry was established, giving exclusive privileges to proprietors of ferries within a half mile of their ferries.

10. The statute authorizing incorporations is general in its terms, and a statute general in its terms and without negative words will not be construed to repeal by implication the particular provisions of a former statute, which are special in their application to a particular case or class of cases, unless the repugnancy be so glaring and irreconcilable as to indicate the legislative intent to repeal.

11. A ferry-franchise is private property within the meaning of the Constitution which declares that private property shall not be *taken or damaged* for public use without just compensation.

12. The Legislature by the general law, under which the defendant was incorporated, and the other laws applicable to corporations did not invest the Harper's Ferry Bridge company with power to take or *damage* any private property, unless compensation was paid or secured to be paid to the owner.

13. It is true, that the charter of the defendant and the general law, under which it issued, authorized the bridge company to build its toll-bridge at Harper's Ferry, but on the same condition that any other improvement company might construct its works, by acquiring the right to *take* or *damage* such private property, as was necessary for such improvement, by paying or securing to be paid to the owner thereof a just compensation therefore.

14. If the proprietor of the ferry had not under the general law of the State had an *exclusive privilege* of transporting persons and things across the river within a half mile of the bridge of the defendant, then the bridge company would not have been under the necessity of paying any attention to the rights of the proprietor of the ferry, because under the law, under which it was incorporated, it would have had the same right as such proprietor of transportation across the Shenandoah river.

1880
Special Term.

Mason
v.
Harpers Ferry
Bridge Co. et al.

15. The erection of a bridge within a half mile of a ferry, although it would confessedly very materially diminish the profits of the ferry-franchise, would not be a *taking thereof* within the meaning of the constitutional prohibition, but is a *damaging* thereof within the said prohibition.

16. There being as yet no legislation prescribing the manner in which an internal improvement company can acquire the legal right to *damage* private property for the use of such corporation, and the plaintiff having the right, as was done in this cause, to restrain the defendant from constructing and operating its bridge, and thus *damaging* his private property, until just compensation should be paid or secured to be paid to him, equity will in this cause award an issue *quantum damnificatus*, to assess the *damage* to the plaintiff's ferry-franchise by the erection and use for public travel of the toll-bridge of the defendant across the Shenandoah river at Harper's Ferry; in which issue said Mason shall be plaintiff, and The Harper's Ferry Bridgecompany defendant: and after said damage is so ascertained, the injunction shall continue in force until compensation for the same is paid; but when paid the injunction shall be wholly dissolve d

17. As the Constitution declares, that in ascertaining such damage " when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders," when said issue is awarded, if either of the parties to the cause require it, the order awarding said issue shall provide, that it shall be tried by an impartial jury of twelve freeholders.

Appeal from and *supersedeas* to an order of the judge of the circuit court of the county of Jefferson, made in vacation, on the 2d day of September, 1879, in a cause in said court then pending, and alss to a decree of the said court rendered on the 21st day of November, 1879, in the same cause, wherein James M. Mason was plaintiff, and The Harper's Ferry Bridge Company and others were defendants, allowed upon the petition of said Mason.

Hon. John Blair Hoge, late judge of the fourth judicial circuit, rendered the order appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

The plaintiff filed his bill in equity on the 21st day of July, 1879, in the county court of Jefferson county, in which he alleges, that he is the owner in fee of one ninth

interest in a tract of sixty-eight and one half acres of land lying on the eastern bank of the Shenandoah river at Harper's Ferry; that by the county court of Jefferson county an order was made on the 22d day of March, 1878, granting leave to the plaintiff to establish a ferry, which has been done; that after that time certain parties had become incorporated under the general law, receiving their certificate of incorporation from the Secretary of State; that they were so incorporated, as the "Harper's Ferry Bridge Company," * * "for the purpose of constructing and operating a toll-bridge from tne town of Harper's Ferry, in the county of Jefferson, State of West Virginia, across the Shenandoah river;" that about the 28th of June, 1879, the defendants without permission or authority and without acquiring the legal right to do so entered upon and took forcible possession of a part of said land for the purpose of erecting a toll-bridge thereon, and are now proceeding to erect such bridge, and unless restrained will erect and operate said bridge; that plaintiff's ferry is equipped and conducted as required by law, furnishes ample, convenient and cheap means of crossing the river, and fully accommodates all the travel over the river within a half mile thereof; that in order to put his ferry into its present successful operation, plaintiff incurred an expense of upwards of $1,500.00, and up to the present time has not realized therefrom $500.00; that the laws of this State give to him as the proprietor of such ferry an exclusive right of charging toll for transporting persons and things across said river within a half mile of its location; that his franchise yields to him a revenue of $800.00 per year; that its value consists in the said exclusive privilege granted to him under the law; that said franchise is valued for taxation at $8,000.00; that nine tenths of the custom is the travel up the Hillsboro grade, which runs along the river-bank upon the said sixty-eight and one half acres, terminates at the eastern landing of the ferry; that the defendant declares its intention to erect forthwith and open for travel to the public its said pro-

posed toll-bridge, which will be within less than two hundred yards of the plaintiff's ferry; that defendant is about to erect said toll-bridge with the purpose of diverting from the ferry and appropriating to itself all the tolls paid by all those, who travel within a half mile of plaintiff's ferry; thereby taking all the toll, which it was the design of the law to secure to plaintiff; that such will be the inevitable effect of the erection and operation of said bridge, and the said erection and operation of said bridge by defendant will necessarily damage irreparably plaintiff's said property, and be in derogation of his vested exclusive right as aforesaid; that defendant has refused to make to the plaintiff any compensation whatever.

The bill also alleges, that the defendant has taken a large quantity of stone from the said sixty-eight and one half acres of land, and that he, the plaintiff, is entitled to the one ninth of the value thereof.

He prays, that an account be taken and the value of the stone taken as aforesaid be ascertained and the defendant be decreed to pay plaintiff one ninth thereof; and that an account be taken of the damage done to the said land, and that one ninth thereof be decreed to be paid to plaintiff; that defendant and its agents be restrained from entering upon said land, until it has acquired the right to do so as prescribed by the laws of this State; that defendant be restrained from building and operating a toll-bridge, and from opening to the public any bridge over the Shenandoah river within a half mile of plaintiff's ferry and from transporting persons or things over the river for reward, until it has paid, or secured to be paid, in the manner prescribed by law a just compensation to plaintiff for the property, which they have taken and propose to take, and for the damage, that will be done to plaintiff's ferry by the operation of said proposed bridge, and for general relief.

On the 29th day of July, 1879, the county court granted the injunction prayed for restraining the defend-

ants, (who were the directors and the company it-self) and each of them and their agents, from further proceeding in and about the construction of the bridge in the bill mentioned, "until by the exercise of the power of eminent domain in the manner prescribed by law they have acquired the right to damage the ferry-franchise and other property of the plaintiff described in the bill, and to take, use and possess that part of the land in the bill mentioned, which will be occupied by the abutments, piers and causeways of the bridge." The injunction-bond was by the court fixed at $500.00, which was given.

On notice given to the plaintiff under the statute the cause was on the 20th day of August, 1879, removed to the circuit court of Jefferson county. The defendants on the 23d day of August, 1879, served notice on the plaintiff, that they would on the 30th day of August move in vacation the judge of the circuit court of Jefferson county to increase the amount of the penalty of the injunction-bond, on the ground that the penalty of said bond was insufficient. On the 30th day of August, 1879, the judge heard the said motion in vacation and took the same under advisement, and on the 2d day of September, 1879, upon affidavits filed "ordered, that the motion of the defendant be allowed, and that the complainant do execute before the clerk of the circuit court of Jefferson county bond conditioned according to law in cases of injunction in the increased penalty of twenty-five hundred dollars ($2,500.00) and with security to be approved by the said clerk ; and it is further ordered, that unless the said complainant or some one for him do execute the bond required by this order within twenty days from the date hereof, the injunction awarded by the county court of Jefferson county in this cause shall from and after the expiration of the said period of twenty days be dissolved." The bond was not given ; and on the 18th day of October, 1879, the plaintiff applied to this court for an appeal from and *supersedeas* to the said order, which were granted.

On the 8th day of November, 1879, the defendant,

The Harper's Ferry Bridge Company, filed its answer to the bill, to which the plaintiff replied generally. The defendant in the answer also claimed the benefit of a demurrer to the bill to the same extent as though formally filed thereto. Defendant in its answer says, it knows nothing of the sale to Neer & Hopwood and Mrs. Reed, and insists upon proof, if such purchase is relied on by plaintiff. It does not admit the other allegations concerning said purchase. It insists, that exhibits E and D of the bill do not show, that there was any such conveyance as is alleged in the bill from Neer & Hopwood to Mrs. Reed, and insists upon proof of such allegation. It does not admit that Mrs. Reed died leaving nine children. It admits that on the 27th day of February, 1879, and after it had obtained a charter from the State of West Virginia, authorizing it to erect the bridge it is now constructing across the Shenandoah river at Harper's Ferry, one John I. Reed did undertake, in consideration of the sum of $1.00, to grant and convey to the complainant by deed, as exhibited with plaintiff's bill, "all his right, title and interest in that certain tract of sixty-eight acres of land opposite Harper's Ferry, and that certain lot of land on the west bank of the Shenandoah river nearly opposite the mouth of the Hillsboro grade, now used as a ferry-landing," and which tract and lot are in the said deed represented as having been sold by the United States to Neer & Company in 1869. But the respondent denies that the grantor had an interest in any land occupied or used by this defendant in the construction of its said bridge, or if the said Reed had any such interest, it was not conveyed to the plaintiff by the vague and indefinite deed exhibited with plaintiff's bill. The defendant denies, that on the 28th day of June, 1879, or at any time it has without permission or authority from any one, and without any proceeding whatever to obtain the right to do so, entered upon and taken forcible possession of a "part of the said land," supposed to refer to the sixty-eight and one half

acres of land mentioned and described in the deed from Ferdinand Fairfax to the United States; and that it has without any color of authority taken from the plaintiff's land and appropriated to its own use a large amount of valuable stone and placed the same in the abutment; or that it declares its purpose forthwith to take a still larger quantity for its use in the construction of said abutment or otherwise. On the contrary the respondent alleges, that it contracted for the construction of the said abutment and all the masonry of the said bridge on the terms, that the contractor should furnish all the material therefor, so that respondent was not to furnish, nor has it furnished or obtained from any source, any materials for said work. *The defendant admits that it has commenced the construction of the bridge, and when completed it will operate it as a toll-bridge*; and admits all the material allegations as to the construction of said bridge and the purpose for which it is to be built.

The answer admits the order establishing the ferry, but denies that the said ferry is established and operated at the place indicated and described in the order and calls for proof as to the matter. *It admits, that a ferry across the Shenandoah river is conducted and controlled by plaintiff, and that the same is within less than a half mile of the proposed bridge;* and that the accomodations of the ferry are sufficient, although more inconvenient than the bridge for the trade and travel between the two shores of the said river, and within half a mile of the ferry. The defendant denies, that the laws of this State give to plaintiff, the proprietor of said ferry, the exclusive right to charge toll for transporting persons and things across said river within a half mile of said ferry. On the contrary the respondent insists upon the right of the State of West Virginia to grant in the manner hereinbefore described the charter given to the defendant for the purpose of constructing a bridge at the place aforesaid, and that under the said act of incorporation the respondent is fully authorized to construct its said work,

1880
Special Term.

Mason
v.
Harper's Ferry
Bridge Co. et al.

and charge and collect such toll for the use thereof as may be allowed by the proper authorities empowered to regulate the same. It admits, that the bridge is located within about four hundred yards of the ferry, but on no property belonging to or in anywise connected with the same, nor does it use any property of the said ferry for any purpose whatever, nor does it propose to take from said ferry any trade and travel, except such as may voluntarily by preference come to it. The defendant prays to be hence dismissed, &c.

Exhibit "A" filed with the bill is a deed from Fairfax to the United States for the sixty-eight and one half acres among other things and is dated October 27, 1818.

Exhibits "B" and "C" are the bond, &c., executed by Neer & Co., with sureties to the United States for the payment of the purchase-money of the sixty-eight and one half acres and other property sold by the United States to Neer & Co., by an agent of the United States on the 30th day of November, 1869. Exhibit "R" is a deed from John T. Reed, who is a son of Elizabeth Reed, deceased, who was a partner in the firm of Neer & Co., for his right, title and interest in the sixty-eight and one half acres of land. Exhibit "D" is a deed from Mrs. Reed to J. S. O'Donnell, dated February 12, 1878, in which she recites the act of Congress providing for a sale of the property of the United States at Harper's Ferry, and the sale of a part of said property on the 30th of November, 1869, to herself and Neer & Hopwood, to wit: "a certain tract of land, together with the Shenandoah Ferry franchise, marked on the catalogue of sale as lot number three, was sold at public sale to John W. Neer, Elizabeth M. Reed and Charles L. Hopwood, the highest bidders, and did there give their bonds to secure the purchase-money for the same, when it should become due."

By reference to the "catalogue" referred to, which is included in plaintiff's exhibits "B" and "C," it appears,

that "lot number three" was the same sixty-eight and one half acres mentioned in the bill.

The deed further recites, that Neer & Hopwood had both sold their interest to her, in the following language: "On the 12th day of April, 1870, said Charles L. Hopwood for divers considerations sold his interest in and to said ferry-franchise to John W. Neer, and whereas by deed dated the 11th day of February, 1871, said John W. Neer and Harriet M., his wife, sold to Elizabeth M. Reed all their right, title and interest in and to said ferry-franchise, by which said several conveyances, hereinbefore mentioned, the said Elizabeth M. Reed becomes the sole owner of each and every right, title and interest thereto belonging or in any manner appertaining save the vendor's lien held by the United States. Now therefore this deed witnesseth, that for and in consideration of the sum of $1.00 (and divers other considerations) lawful money of the United States * * * the said party of the first part hath bargained and sold and by these presents doth grant and convey, and surrender unto the said party of the second part his heirs and assigns all her right, title, interest, claim and demand whatever in law and equity in and to the above described ferry-franchise, and the appurtenances thereto belonging to have and to hold, &c."

There is no direct proof that Neer and Hopwood are dead. All that is said on the subject, if anything is said on that subject, is in Mr. Mason's deposition where he says: "Mrs. Reed was the survivor of Neer & Co." He further says: "Neer and Hopwood told me, they had sold out their interest to Mrs. Reed." It is proved that Mrs. Reed died in the winter of 1878.

On the 21st of November, 1879, the cause was heard on the bill and exhibits filed, the demurrer to the bill, the answer to the Harper's Ferry Bridge Co. and general replication thereto, and depositions taken, and was argued, and the court being of opinion, that the plaintiff had failed to make a case which entitled him to relief in

a court of equity, dismissed the plaintiff's bill with costs. No notice is taken of the injunction in this order, the court regarding it as before dissolved.

From this decree the plaintiff obtained an appeal with supersedeas.

*James M. Mason,* for Appellant, cited the following authorities :

3 Bl. Com. 219; 3 Kent 458; 10 Barb. 234, 11 Pet. 606; 7 Pick. 372; *Id.* 485; *Id.* 501; 2 C. M. & R. 432; 20 N. Y. 370; 6 B. & C. 703; 2 Exch. 149; 10 Minn. 23; 20 Ark. 561; 3 Murph. 54; 3 Ired. 613; 1 Black 634; 4 Jones Law 277; 2 Dane Abr. 686; 2 Stew. (Ala.) 211; 34 N. J. S. 269; 6 Q. B. 429; 6 Mee. & W. 236 ; 1 N. & McC. (S. C.) 387; Code ch. 44 § 8 ; *Id.* § 6 ; 11 Leigh 521; 3 Wall. 74; 1 Smith L. C. (4th Am. ed.) 131 ; 10 Wall. 576; 15 Ohio 581; 21 Conn. 309; 2 B. & Ad. 792; 6 Man. & G. 229; 36 N. J. L. 195; 12 Barb. 562; 15 Johns 358 ; 27 Barb. 517; 15 Conn. 321 ; 14 Pick. 159; 14 Conn. 152 ; 4 Cush. 72; 43 Conn. 234; 35 N. J. L. 562 ; 34 N. J. L. 268; 2 U. S. Dig. (Abbott) 821; 6 Cow. 518; 2 Mich. 519; 4 N. H. 537 ; 35 Mich. 400 ; Code p. 272 § 25 ; 11 Ia. 367; 4 Ad. & E. 383; 7 E. & B. 668; 2 E. & E. 442; 10 Pick. 389; 14 Johns. 290; 2 Mee. & W. 157; 14 Id. 452; 3 Denio 227; 29 Conn. 221 ; 12 N. H. 261; 3 Wall. 75; 3 Dana 373; 2 Bl. Com. 37; 3 Wall. 721 ; 2 Dutch. 148; Mills Em. Dom. § 30; 13 W. Va. 476; 15 W. Va. 394; High on Inj. § 391 ; *Id.* § 764; 5 Hill 170; 11 Barb. 44, 72; 29 Gratt. 144; 34 Barb. 499, 502, 507 ; 16 Conn. 99 ; 17 N. J. L. 129 ; 21 Conn. 293; 1 Stock (N. J. Eq.) 475 ; 10 Abb. Dig. §§ 861, 955, 2034, 2036 ; 7 Miss. 569.

*William H. Travers,* for Appellee, cited the following authorities :

28 Gratt. 131; 4 W. Va. 312; High on Inj. § 35; *Id.* §31; 7 Johns. Chy. 315; 7 Gratt. 229 ; 2 Rob. Pr.

672; 2 Rob. 209; Code ch. 44 § 6; 8 Leigh 479; 10 Leigh 444; 11 Leigh 43; 2 Min. Inst. 29; Con. W. Va. Art. XI, sec. 11; 2 Porter (Ala.) 296; 8 Bush 31; 14 Barb. 412; 3 Sandf. Ch'y. 679; 8 Cow. 146; 21 Conn. 305; Cooley Con. Lim (1st ed.) 537, 538; 2 Otto 794.

*Charles J. Faulkner*, for Appellee, cited:

Con. W. Va. Art XI, sec. 1; *Id.* Art. VI, sec. 39; 11 Otto 794; 7 Gratt. 205; 11 Leigh 43; 11 Pet. 420; 9 Otto 641; Cooley Con. Lim. 542 and notes.

JOHNSON, JUDGE, announced the opinion of the Court:

The first question is: Could the court hear in vacation a motion to require a new injunction bond with an enlarged penalty? The power to grant injunctions, in vacation, and to require bond to be then given carries with it as a necessary incident, the right to hear and determine in vacation a motion to require a new bond to be executed with an enlarged penalty. *Hutchinson et al.* v. *Landcraft*, 4 W. Va. 316. The question, as to the correctness of the order, made in this case upon the motion to require a new bond, did not arise in *Hutchinson* v. *Landcraft*, because in that case the new bond was executed within the time prescribed in the order. But in the case before us the court erred in failing to add to the order requiring the new bond, which is as follows: "that unless the complainant or some one for him do execute the bond required by the order within twenty days from the date thereof, the injunction awarded by the county court of Jefferson in this cause shall from and after the expiration of twenty days be dissolved," the following words, "*until such bond be given.*" The plaintiff ought not by the order of the court to have been put in any worse condition, than he would have been in, had he failed to give the bond in the first instance. If he did not give the new bond, and the bill was purely an injunction-bill, and could not stand but for the injunction,

margin note: 1880 Special Term.
Mason v. Harpers Ferry Bridge Co. et al.

margin note: Syllabus 1.

when the cause was matured for hearing, of course the bill would be dismissed, and no harm could possibly result to the defendant by the plaintiff having the right before such dismissal to give the injunction-bond. If on the other hand the bill could stand without the injunction, the new bond not having been given, no harm could result to the defendant, because he is no longer enjoined.

Syllabus 2.     Therefore upon a motion before a judge in vacation to require of the plaintiff a new injunction-bond with an enlarged penalty the proper order to make, if the old bond is insufficient, is, if the new bond is not given within such reasonable time, as the court under the circumstances shall fix, that after such time the injunction shall be dissolved until such bond be given.

The counsel for appellee insists that the bill should be dismissed, because the court did not have jurisdiction.

Syllabus 3.     But equity has jurisdiction to restrain the taking or damaging of private property for public use, without just compensation, even though an action at law will lie for the recovery of damages in such cases, after the property has been so taken or damaged. *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420; *Binghampton Bridge*, 3 Wall. 51; *Bridge Proprietors* v. *Hoboken*, 1 Wall. 116; *Piatt & Co.* v. *Coviugton & Cincinnati Bridge*, 8 Bush 37; *Glover* v. *Powell et al.*, 2 Stock. 211; *Burlington & Henderson Co. Ferry Co.* v. *Davis*, 48 Ia. 133; *Hartford Bridge Co.* v. *Union Ferry Co*, 29 Conn. 210; *Murry* v. *Menefee*, 20 Ark. 561; *Smith* v. *Harkins et al*, 3 Ired. 613; *Gates* v. *McDaniel et al.*, 2 Stew (Ala.) 211; *Dyer* v. *Tuskaloosa Bridge Co.* 2 Porter 296; *Trent* v. *Cartersville Bridge Co.* 11 Leigh. 521.

If therefore the case made by the bill showed that Mason had a private property, which the Harper's Ferry Bridge Company were invading or damaging, then the court had jurisdiction; and if he had no such property, then the bill was properly dismissed for want of equity.

In *Smith* v. *Hawkins supra*, Ruffin, C. J., in deliver-

ing the opinion of the Court said: "Not only did the common law give redress for the invasion of the franchise of a ferry by an action, but upon its being found that such redress was not adequate, equity interposed the more effectual remedy and restraint of injunction. It is obvious, that from the difficulty of proving the extent of the injury from time to time, and from the constant litigation arising out of the repeated invasions of the right, that must be naturally expected from a rival erection, the relief in equity is highly salutary, and indeed is the only remedy that has any pretensions to be deemed adequate. The cases are numerous of redress in that method."

What were the rights of Mason under the law at the time his ferry was established, and up to the time the defendant was incorporated?

Section six of chapter forty-four of the Code provides that leave shall not be granted (by the Board of Supervisors at the time the Code went into effect, and until the adoption of the Constitution of 1872, and afterwards by the County Court) to establish over a water-course a ferry within half a mile of another ferry legally established over the same water-course, except on the Ohio river. It then imposes a penalty for the violation of the provision, and then provides that "when any association of persons is formed for the purpose of defeating or evading the provisions of this section, every member of such association shall be subject to the said forfeiture."

Section seven provides, that "The preceding section shall not be construed to prevent a person not a member of any such association from going across any water-course in his own boat, or taking therein his own property, or the members of his own family, or persons in his employment, nor to prevent a merchant or miller, not a member of such association, from carrying across a water-course in his own boat, without reward therefor, any person *bona fide* engaged in the actual trans-

portation to or from his store or mill, of grain, timber or other produce."

Section eight provides that, "In the case of a water-course, over which there is a lawfully established ferry, if any person, his horse or carriage be unlawfully transported for revenue over such water-course within half a mile of any such ferry, the person so transporting the same shall forfeit twenty dollars to the proprietor of such ferry over the said water-course, as is nearest to the place of such transportation."

I have quoted so much from our statutes to show the exclusive privileges, that were granted to a proprietor of a ferry.

In *Patrick* v. *Ruffner* 2 Rob. 214, Judge Baldwin said, "A ferry is an incorporeal hereditament acquired from the public, and in this country granted by a special act of the Legislature, or by some other competent authority under the provisions of a general law. * * * The grant of the franchise from the public, and the use of the ferry with its appurtenant landings and outlets is all that need be established in an action by the grantee against a wrong doer, who disturbs his enjoyment. Nor is it material whether the disturbance is by invading the plaintiff's right to the *exclusive transportation and tolls*, or by obstructing or impairing his navigation, or by destroying or injuring the landings or outlets ; *quacunque via* the grievance is substantially the same, and consists, not in the damage done to an estate or interest in the water or soil, but to the *value or profits of the franchise.*"

Under the statutes we have quoted was there an injury, contemplated by the statute, done to the franchise by the construction of a toll-bridge, keeping out of view for the present the authority to build it?

The sixth section forbids the establishment of a ferry within half a mile of a ferry already established. Now it is said a *bridge* is not a *ferry,* and therefore there was nothing to prevent, either a free or toll-bridge from being constructed and opened to the public, within a

half mile of an established ferry. But it seems to me, that taking the whole chapter together there can be no doubt, that as Judge Baldwin said in *Patrick* v. *Ruffner*, the grievance consists not in the damage done to an estate or interest in the water or soil, *but to the value or profits of the franchise.*

In *Gates* v. *McDaniel et al.*, 2 Stew. (Ala.) 211, Gates had a public ferry established by law, and McDaniel and Spurlin built a bridge near it without authority, and suffered all persons to pass free of toll. It was held, that it was a violation of the rights of Gates, and that equity would restrain McDaniel and Spurlin from using it except for their own families. Taylor, Judge, in delivering the opinion of the court quoted from the statute : "that no public ferry shall be established within less than two miles by water of any ferry already established, unless on any river at, or within two miles of any town." And further, "that if any person or persons shall establish a public ferry, public road, toll-bridge, or causeway contrary to this act, he or they shall forfeit and pay $500.00," &c., and then said: "What is the reason, that persons are prohibited from establishing a public ferry within two miles of another? Clearly because the owner of the first has entered into onerous engagements, when he obtained the order to establish the ferry, * * unless he has some such protection his ferry will become profitless, of course will be neglected, and travellers and others meet with great delays. But will the object of the general assembly in affording this protection be defeated by the erection of a bridge within the prohibited distance? Certainly much more effectually than by establishing a ferry, * * * apart from all statutory provisions, except those which relate to the establishment of the ferry, I am decidedly of opinion, that the defendants had no right to build a public bridge within the immediate vicinity of the ferry, calculated to destroy the profits of the ferry."

In *The Queen* v. *Cambrian Railway Co.*, 6 Q. B. 421,

1860
Special Term.

Mason
v.
Harpers Ferry
Bridge Co. *et al.*

Blackburn, Judge, said: "The cases, so far as I remember them, in which actions have lain for the interference with, or disturbance of, the right of ferry, have been where there has been a carrying across by boats; but I cannot bring my mind to doubt the principle, that if a bridge were to be erected across a ferry, and people were to go across the bridge, and consequently the bridge would have the effect of disturbing the owner of the ferry in his right, he would be entitled to bring an action on the case, and to recover damages." *Shadwich* v. *Proprietors Haverhill Bridge Co.*, 2 Dane 686.

Syllabus 5.

The unauthorized erection of a bridge for transportation across the stream within a half mile of a ferry already established was as much prohibited by the statute as the establishment of another ferry within the same distance.

At the time, therefore, that the defendant, The Harper's Ferry Bridge Company, applied for its charter, the plaintiff had rights that were carefully protected by law, and he could enjoin any one who would invade his franchise. But he had no rights so sacred that they could not be interfered with by the Legislature. No other power could interfere with them. The right to establish ferries and toll-bridges is in the Legislature, and that body can at any time, by a repeal of the general law, take away all the exclusive privileges of proprietors theretofore existing.

Syllabus 6.

Of this proposition there can be no doubt after the exhaustive arguments by the Judges in the case of *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420. In that case it was well and truly said: "The object and end of all government is to promote the happiness and prosperity of the community, by which it is established; and it can never be assumed that the government intended to diminish its power for accomplishing the end, for which it was created. And in a country like ours, free, active, and enterprising, continually advancing in numbers and wealth, new channels of com-

munication are daily found necessary both for travel

and trade, and are essential to the comfort, convenience and prosperity of the people. A State ought never to be presumed to surrender this power, because like the taxing power the whole community have an interest in preserving it undiminished."

The Legislature in this State in the case of ferries has never in any instance, as far as I am advised, attempted to surrender its power over the subject. See *Tuckahoe. Canal Co.* v. *Tuckahoe R. R. Co.*, 11 Leigh 42; *Sommerville* v. *Wimbish*, 7 Gratt. 205; *Turnpike* v. *State*, 3 Wall. 210; *Washington & Baltimore Turnpike Co.* v. *B. & O. R. R. Co.*, 10 Gill & Johns. 392; *Hartford Bridge* v. *Union Bridge Co.*, 29 Conn. 210; *Dyer* v. *Tuskaloosa Bridge Co.*, 2 Porter 296.

Has the Legislature repealed the statute giving exclusive privileges to the proprietors of ferries in this State? Art. XI. sec. 1 of the Constitution provides as follows: " The Legislature shall provide for the organization of all corporations hereafter to be created by general laws, uniform as to the class to which they relate; but no corporation shall be created by special law; provided, &c.," which provision does not affect the question before us.

Art. 6 sec. 39 provides, that the Legislature shall not pass local or special laws * * for "chartering, licensing, or establishing ferries, or toll-bridges;" but shall provide by general laws for such cases. It is true, as insisted by counsel for appellee, that in pursuance of the duty, thus made mandatory upon the Legislature, a general law was passed giving to the Secretary of State the authority to issue a certificate of incorporation for specified purposes, and among others for works of " internal improvement;" and it is also true, as stated by counsel, that the structure of the defendant at Harper's Ferry connecting the town with the turnpike on the other side of the river is embraced in the classification "internal improvement." It is also true, as insisted by counsel for appellee, that franchises and corporate rights granted Syllabus 8.

indirectly by the State through instrumentalities, provided by general laws for such purposes, are the same in effect, as if the power conferring such franchises and rights had been exercised directly by the State itself.

In *Wright* v. *Nagle*, 11 Otto 794, the Supreme Court of the United States held, that "a grant of a franchise in some form is therefore necessary to enable an individual to establish and maintain a toll-bridge for public travel; the Legislature of the State alone has authority to make such a grant, it may exercise this authority by direct legislation, or through agencies duly established, having power for that purpose. The grant, when made, binds the public and is directly or indirectly the act of the State. The easement is a legislative grant, whether made directly by the Legislature itself, or by any one of its properly constituted instrumentalities." From this authority it is argued by counsel, that if the certificate incorporating the Harper's Ferry Bridge Company be a legislative grant, as must be assumed under the authority, then the plaintiff has no exclusive rights in the premises that the law protects.

This is a *non sequitur*, as I think can be easily shown by *Wright* v. *Nagle*, the case cited and relied on by counsel for appellee. In that case a suit was brought in equity, to "restrain the defendants from continuing and maintaining a toll-bridge across the Etowah river at Rome, Georgia." The facts were, that in July, 1851, the inferior court of Floyd county entered into a contract with one H. V. Miller, by which the court for a good and valuable consideration granted to Miller and his heirs and assigns forever, so far as it had authority for that purpose, *the exclusive right of opening ferries, and building bridges* across the Oostanaula and Etowah rivers at Rome, within specified limits. Miller on his part bound himself by certain covenants and agreements appropriate to such a contract; he afterwards assigned his rights under the contract, so that when this suit was instituted, Wright and Shorter were the owners. Large

1880
Special Term.

Mason
v.
Harpers Ferry
Bridge Co. et al.

amounts of money were spent in building and maintaining the aforesaid bridges, and the franchise was a valuable one. In December, 1872, the commissioners of roads and revenue for the county authorized the defendants to erect and maintain a toll-bridge across the Etowah river within the limits of the original grant to Miller. The bill alledged, that "the said board of commissioners in the making and conferring said franchise exercised legislative powers conferred upon it by the laws of the State ; that said grant is in the nature of a statute of the Legislature, that the same is an infringment of the said grant and contract, made by the inferior court with Miller, and impaired the obligation of a contract, &c."

The answer stated that the commissioners of roads and revenue were invested with legislative, or *quasi* legislative powers, and exclusive powers upon the subject, and therefore the order making said bridge and streets public has all the authority, sanction and effect of an act of the Legislature of the State, and cannot be interfered with by the unauthorized and void act of a public functionary of the State.

Waite, C. J., in delivering the opinion of the court, said: "We proceed therefore to consider whether the inferior court had the power to grant Miller the exclusive right. It certainly has done so, if the power existed. There is no doubt that the Legislature under the constitution of the State, in force at the time, had authority to make such grant. The only question is, whether power for the purpose has been delegated to the inferior court." He then reviews the statutes and comes to the conclusion, that no power had been delegated to the inferior court to make such an exclusive grant. He had already held, that it was in the power of the Legislature to confer upon the inferior court the power to make such exclusive grant, but that such power had not been exercised. If this be true, then the Legislature of Virginia and the Legislature of this State had the right to say, that except by the Legislature itself no ferry should be

established within a half mile of a ferry already established, and thus to invest proprietors of ferries, during the pleasure of the Legislature, with exclusive privileges. In the Georgia case, if the power to grant the exclusive privilege had been delegated to the inferior court, the grant would have been exclusive, and the court in that case would have held, that the assignees of Miller, to whom had been given the exclusive privilege, could have restrained any invasion of that right, although under the general law the board of commissioners had granted the right to a party to build a toll-bridge within the exclusive bounds of Miller's grant. There the commissioners of roads and revenue, under the general law, could establish roads, bridges, &c., and in the exercise of that power had established the bridge. It cannot be maintained that this general law took away special privileges granted to Miller under the authority of the Legislature, and I think the case of *Wright* v. *Nagle*, is an authority expressly in point, that such general law could not have such effect.

It seems to be contended here, that under our general corporation laws no special privileges under the old law need be respected. This would be so, had the Legislature repealed the law giving exclusive privileges to proprietors of ferries. That it had the power so to do, we have already seen; the question is: Has it exercised that power? Under the provisions of section 35, chapter 114, Acts 1872–3, the county court or tribunal for fiscal and police purposes of every county *subject to the restrictions prescribed by law*, may establish, make, regulate, alter or discontinue from time to time, roads, bridges, public landings, ferries and mills, within the limits of their county." So far from evincing any intention *to take away the exclusive rights of proprietors of ferries theretofore existing*, the direct contrary appears, as the authority to the county court is, among other things, to establish *ferries, "subject to the restrictions prescribed by law."* The law denies the right to "establish a ferry

within a half mile of a ferry already established." I
have searched diligently, and I can find no statute that
expressly, or by implication, repeals the law in force,
when the defendant was incorporated, giving exclusive
privileges to proprietors of ferries within a half mile of
their ferries.   The chapter authorizing incorporations is
general in its terms ; and this Court, in *C. & O. Railway
Co.* v. *Hoard,* 16 W. Va. 270, held, that "a statute gen-
eral in its terms and without negative words will not
be construed to repeal by implication the particular pro-
vision of a former statute, which are special in their ap-
plication to a particular case or class of cases, unless the
repugnancy be so glaring and irreconcilable as to indi-·
cate the legislative intent to repeal."   There is certainly
no such glaring inconsistency here, or any inconsistency
whatever.   The statutes may well stand together.

A ferry-franchise is private property within the mean-
ing of that section of the constitution, which declares
that private property shall not be taken or damaged for
public use without just compensation. *Stevens* v. *Stevens,*
3 Ia. 373; *Charles River Bridge* v. *Warren Bridge,* 7
Pick. 482, Putnum, Judge ; *Patrick* v. *Ruffner,* 2 Rob.
222, Allen, Judge ; *Smith* v. *Harkins,* 3 Ired. 613 ; *Mat-
ter of Hamilton Avenue, Brooklyn,* 14 Barb, 405; *Regina*
v. *Cambria R. R.,* 6 Q. B. 422.

In the case from 14 Barb., Strong, Judge, said : " The
mayor and common council of the city of Brooklyn have
presented the report of the commissioners of estimates
and agreement in the matter of the proposed opening of
Hamilton avenue and applied for its confirmation.   The
application is resisted by the Brooklyn and Gowanus
Toll-Bridge Company on the grounds; first—that no
compensation has been allowed to them for the injury to
their franchise, which would be effected by the contem-
plated improvement; and second—that the commission-
ers in reviewing their estimate and agreement increased
the proportion of the expense to be borne by the com-
pany, &c.   *   *   The appellants in support of their

1880
Special Term.

Mason
v.
Harpers Ferry
Bridge Co. *et al.*

Syllabus 9.

Syllabus 10.

Syllabus 11.

first objection rely upon the well known provision in our State Constitution, that private property shall not be taken for public use without just compensation. Their franchise is undoubtedly private property within the meaning of the constitutional enactment."

When the defendant was incorporated, it was invested with power to have property condemned to aid it in the construction of its improvement. It did not have the right to take or damage private property without just compensation. The Legislature did not invest it with power to take or damage any private property, unless compensation was paid or secured to be paid to the owner. It claims, that the spirit of the age is against monopolies. So it is and justly so; and no doubt the bridge over the Shenandoah, will be a great improvement over the ferry, and the defendant ought not to be, and will not be, prevented from the construction and use of such bridge, provided said defendant acquires the legal right to construct and use it.

Syllabus 12.

While it is true, that under the general law allowing the formation of internal improvement companies, the defendant could construct its toll-bridge where it did construct such bridge, yet it might do so only on the same condition that any other internal improvement company might construct its work, by acquiring the right to take private property necessary for the purpose of such improvement by paying or securing to be paid a just compensation therefor, and under our Constitution by paying or securing to be paid a just compensation for any *damage* it might inflict upon private property. If the proprietor of the ferry at Harper's Ferry, had not under the general law of the State had an exclusive privilege, then the bridge-company would not have been under the necessity of paying any attention to the rights of the proprietor of the ferry, because it would have had the same right under the law, under which it was incorporated, as such proprietor, of transportation across the Shenandoah.

Syllabus 13.

Syllabus 14.

The plaintiff has his private property near the bridge which will confessedly damage it. He claims it will be *taken*. It is true, that the Supreme Court of the United States in the case of *Pumpelly* v. *Green Bay Co.*, 13 Wall. 180, and the State court in *Eaton* v. *Railroad Co.*, 51 N. H. 504 held, the lands were taken, when they were flooded in such a way as to make them worthless to the owner, the injury being permanent. In *Glover* v. *Powell*, 2 Stock. 211, it was held, that "a partial destruction or diminution of value is the *taking* of private property." But it seems to me that there is no *taking* of the franchise here. The plaintiff will still have the right to use his ferry and solicit and obtain all the patronage he can ; it is not proposed to prevent him from collecting tolls, and using his ferry just as he did before. But his private property will be very seriously *damaged* no doubt.

Strong, Judge, in *Matter of Hamilton Avenue, supra,* said : " An important question then is, will the proposed improvement, if consummated, *take away* the franchise or any part of it ? A franchise is taken when the party to whom it has belonged, is deprived of the power or means of exercising it ; but it is not *taken* when its emoluments are diminished by an improvement which does not destroy or impair such power or means. Such a diminution is of course a damage, and may or may not constitute a valid cause of action, but it does not bring the case within the constitutional prohibition." According to the decision of this Court in *Johnson* v. *Parkersburg*, 16 W. Va. 402 the *damage* done to the franchise is within the provisions of our Constitution, which declares that private property shall not be taken or *damaged* for public use without just compensation ; nor shall the same be taken by any company incorporated for the purpose of internal improvement, until just compensation shall have been paid or secured to be paid to the owner ; and when private property shall be taken or damaged for public use, or for the use of such corporation, the compensation to the owner shall be ascertained in such man-

1880
Special Term.

Mason
v.
Harpers Ferry
Bridge Co. *et al.*

Syllabus 15.

ner as may be prescribed by general law ; provided that when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders." The defendant had no right to build the bridge without acquiring the legal right to damage the plaintiff's franchise or procuring the right to do so from the plaintiff himself. The Legislature has not by general law, prescribed the manner in which a party could acquire the right to *damage* the property.

Mason could either do what he did, restrain the defendant from constructing and using the bridge or remain passive, until it was completed, and sue for damages at law. He chose the former course, and by virtue of the *supersedeas* in the first appeal the injunction was continued in force. Counsel for appellee insists, that by a recent case decided by the Supreme Court of the United States, *Transportation Co.* v. *Chicago,* 9 Otto 641, it is shown, that the appellant has no *right of action,* no claim for *damages* for any real or supposed interference with the *profits* of his ferry, on the ground that acts done in the proper exercise of governmental powers, and *not directly encroaching upon private property, though their consequences may impair its use,* are universally held not to be a taking within the meaning of the constitutional provision. This would undoubtedly be true but for our constitutional provision above discussed. In *Johnson* v. *Parkersburg,* this Court in its opinion said in reference to the last case cited by counsel, which case was relied upon by counsel for Parkersburg, in quoting from the opinion of Justice Strong : "The present constitution of Illinois took effect August 8, 1870, after the work of constructing the tunnel had been substantially completed. It ordains that private property shall not be *taken* or *damaged* for public use without just compensation. This is an extension of the common provision for the protection of private property, but it has no application to the case, as was decided by the Supreme Court of the State in *Chicago* v. *Rumsey."* And the reason why it

was held in *Chicago* v. *Rumsey*, 87 Ill. 348, that the constitution of 1870 had no application to the case was, in the language of the court, "So far as the city caused, or could cause, this act to be done, (the act complained of,) it did so, not only before the adoption of the present constitution, but even before the delegates were elected who passed that instrument."

The alleged title of the plaintiff to an interest in the tract of sixty-eight and one half acres of land, is shown by the record to be so vague and indefinite, as to prevent a court of equity from entertaining an injunction to prevent a threatened injury thereto.

At the last term of this Court, a motion to dismiss this cause was made upon the alleged ground that by an agreement in writing, which was made the ground of the notice, the plaintiff had agreed for a valuable consideration to abandon his appeal and *supersedeas.* The court overruled the motion to dismiss, but in its order reserved the right to consider the matter further upon the final hearing of the cause; but as the motion has not been further insisted upon, we decline to reconsider our former judgment thereon. The effect of the said agreement in writing was to suspend the operation of the *supersedeas*, and consequently the injunction, and thereby permit the defendant to complete the bridge, which it did.

There being no legislation as yet prescribing the manner in which an internal improvement company can acquire the legal right to *damage* private property for the use of such corporation, what decree should the circuit court of Jefferson county have rendered in this cause? The prayer of the bill is "that the defendant be restrained from building and operating a toll-bridge, and from opening to the public any bridge over the Shenandoah river within a half mile of plaintiff's ferry, and from transporting said travel over the river for reward, until it has paid, or secured to be paid, a just compensation to plaintiff for the property which it has taken, and proposes to take, and for the damage that will be done to

Syllabus 16.

plaintiff's ferry by the operation of said proposed bridge. It there had been a statute-law under which the defendant could have proceeded to have it ascertained what damage would be done to the ferry-franchise, the decree of the court should have continued the injunction in force, until that was done, and the amount paid or secured to be paid. But, as we have seen, there is no such statute, and because there is not, it does not seem equitable that the injunction should be perpetuated. In a court of equity everything will be done to promote justice between the parties. The plaintiff ought to have damages for the injury done to his private property, and the defendant, after paying that damage, ought to be permitted to use its bridge to accommodate the public travel, and be re-imbursed for the money it has expended, and to reap the profits of its enterprise.

Accounts in equity are often taken to ascertain the value of improvements, &c.; but where the damage is unliquidated, an issue *quantum damnificatus* is sometimes directed. Judge Story says, 2 Eq. Juris §794, "compensation or damages ought ordinarily to be decreed in equity only as incidental to other relief sought by the bill and granted by the court, or where there is no adequate remedy at law, or where some peculiar equity intervenes." In *Pratt et al.* v. *Law & Campbell,* 9 Cranch 493–4. Mr. Justice Johnson in delivering the opinion of the court said : "To obtain a specific performance is no part of Law's bill. It is incumbent on the opposite party, therefore, to show some ground of right to force such a decree upon him. But considering, as we do, that Law is not in default, there can be no reason to decree a specific performance, when everything shows, that it would be productive of nothing but loss. Besides a specific performance, such as would answer the ends of justice between these parties, has become impossible· * * * An issue *quantum damnificatus* it is certainly competent to this court to order in this case ; but it is not consistent with the equity practice to order it in any

1880
Special Term.

Mason
v.
Harpers Ferry
Bridge Co. *et al.*

case in which the court can lay hold of a simple, equitable and precise rule to ascertain the amount, which it ought to decree."

In *City of London* v. *Nash,* 3 Atk. 516, Lord Hardwicke held : "The relief must be by way of enquiry of damages before a jury; and I am more inclined to this than to decree a specific performance, because it appears upon the dispute of the extent of the buildings, that there was a formal committee with Mr. Donce, the surveyor of the city of London, at the head of it, viewing the repairs, while the workmen were employed about it, and yet made no objection to Mr. Greaves going on, and therefore are too late in coming here for a specific performance, unless they had brought a bill recently and immediately after the survey." Lord Hardwicke directed an issue to try what damages the mayor, commonalty and citizens of London had sustained by the non-performance of the covenants in the lease to Mr. Greaves, and appointed the city of London plaintiffs, and Nash alone defendant. See also *McConnell's heirs* v. *Dunlap's devisee,* Hard. 41 ; *Phillips* v. *Thompson,* 1 Johns. Chy. 131 ; *Isler et ux.* v. *Grove et ux.,* 8 Gratt. 257.

In *Phillips* v. *Thompson,* a bill in equity was filed for the specific performance of a contract to pay damages for lowering a dam, &c.; but the contract was not proved to the satisfaction of the court, and specific performance was refused; but it appeared in the case, that the defendants had inflicted injury upon the plaintiff, and that the plaintiff ought to be compensated therefor. Chancellor Kent, page 149, after citing a number of authorities said : " These adjudications fully justify me by their strong and pointed application to this case in denying to the plaintiff the execution of the agreement contained in the his bill. He has failed in satisfactory proof of his agreement, he fails also in showing such acts of performance, as are necessarily to be imputed to that agreement, and cannot reasonably be imputed to any other cause. * * But here arises another and serious question, whether

the bill ought to be dismissed. It is certain, that the plaintiff has sustained injury by the act of the commissioner and is entitled to a compensation, and the defendants admit, that they entered upon his land and dug the canal under his express or implied assent and with a mutual understanding, that compensation should be made. How is the plaintiff then to obtain compensation? He cannot perhaps for the lowering of his dam in the mode provided by the eleventh section; for it was his own voluntary act, not that of the commissioner; and he might meet with insuperable difficulties in an action of trespass at law for entering to cut the canal, as the entry appears to have been made with his assent, and seven years have elapsed since it was made. This case then presents peculiar and strong claims for the interference of this Court in securing to the plaintiff, a due and adequate compensation. * * * I have no doubt of the jurisdiction of this Court over this case, and that it can cause the damages to be assessed, either by a reference to a master to enquire into and report them, or by an issue *quantum damnificatus*. * * * The cases are numerous, in which the court of chancery has caused damages to be assessed, either by an issue or by a master at its discretion. (2 Fonbl. 441; *Hedges* v. *Errard*, 1 Eq. Cas. Abr. 18 Pl. 7; *Cudd* v. *Rutter*, 1 P. Wms. 570; *Errington* v. *Agnesly*, 2 Bro. 341).

"I believe the mere usual course, where the damages are not a matter of more computation, is by awarding an issue; and under the circumstances of this case I deem it the more advisable method. I shall accordingly retain the bill and award an issue of *quantum damnificatus* to assess the damages, which the plaintiff has sustained by the entry and acts of the commissioners and by his own act in lowering his dam, which was a consequence of their directions; that the issue be tried at the Orange circuit court, and that all further questions be reserved until the return of the *postea* on such issue."

In *Isler et ux.* v. *Grove et ux.*, the question was whether

any timber unaccounted for had been taken by the guardian from his ward's lands, and if so, what sum would be a proper charge for the timber so taken and sold or converted to the use of said guardian. Allen, Judge, said the case from the character of the claim was peculiarly proper for issue; for although it was competent for the appellees to make the alleged profits received and made by the guardian from the use and sale of the timber taken from the ward's estate a matter of account, yet the extent of the charge on this account, if any was proper, depends upon estimate, and is in the nature of unliquidated damages, and therefore should have been submitted to a jury.

1880
Special Term.

Mason
v.
Harpers Ferry
Bridge Co. *et al*

None of the cases we have cited was like the case at bar, but we think the principles therein announced are applicable here. In this cause there is a peculiar equity, that in the interest of both parties would demand that the damages to the plaintiff's property should be ascertained in this cause rather than send the plaintiff to a court of law to ascertain the damage to his property.

For the foregoing reasons the order of the judge of the circuit court of Jefferson county, made in this cause in vacation on the 2d day of September, 1879, dissolving the injunction granted by the county court is reversed with costs to the appellant; and the decree of the circuit court of Jefferson county, rendered on the 21st day of November, 1879, dismissing the plaintiff's bill is reversed with costs to the appellant; and this court proceeding to render such decree as the circuit court should have rendered, the injunction, so far as it restrained the defendant from *taking* any part of the sixty-eight and one half acres of land described in the bill, in which the plaintiff claimed to have an interest, is dissolved, but so far as said injunction restrained the defendant from constructing and using the bridge mentioned in the bill, until compensation was paid, or secured to be paid, to the plaintiff for damages to his ferry-franchise caused thereby is continued in full force and effect. And

1880
Special Term.

Mason
v.
Harpers Ferry
Bridge Co. et al.

Sylalbus 17.

this cause is remanded to the circuit court of Jefferson county with instructions to award in this cause an issue *quantum damnificatus* to assess the *damage* to the plaintiff's ferry-franchise, by the erection and use for public travel of the toll-bridge of the defendant across the Shenandoah river at Harper's Ferry; and as the Constitution of the State declares, that in ascertaining such damage, "when required by either of the parties such compensation shall be ascertained by an impartial jury of twelve freeholders," if when said issue is awarded either of the parties to the cause require it, the order awarding said issue shall provide, that it shall be tried by an impartial jury of twelve freeholders, in which issue Mason shall be plaintiff and the Harper's Ferry Bridge Company defendant; and when said jury shall have ascertained said damage by their verdict, the said court shall decree the same to be paid to the plaintiff with the costs of the suit; and, until the damage so ascertained shall be paid, shall continue the injunction in force, but when so paid, the said injunction shall be wholly dissolved; and the circuit court shall proceed with this cause according to the principles of this opinion and the rules governing courts of equity.

JUDGES GREEN AND MOORE CONCURRED.

JUDGE HAYMOND DISSENTED.

ORDER REVERSED IN PART. CAUSE REMAMDED.